**James MILLER, Appellant,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Appellee.**

**No. 83–2614.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1984.

Decided Nov. 2, 1984.

Philip Mears, Iowa City, Iowa, for appellant.

George Murray, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and HANSON,* District Judge.

LAY, Chief Judge.

James Miller seeks review of a district court order affirming the administrative denial of disability benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401–433 (1982), and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–1385 (1982). We find that the Secretary's decision is not supported by substantial evidence on the record as a whole. We vacate the judgment of the district court and remand with directions to award Miller benefits under both Title II and Title XVI of the Act.

**Facts**

James Miller is a thirty-one year-old male of above average intelligence who has completed approximately three years of college. Between 1975 and 1982, Miller was hospitalized over seventeen times to receive treatment for an ongoing mental disorder. In 1976, Miller was diagnosed as schizophrenic.

Miller began receiving disability benefits in 1976. Although his mental condition remained relatively unchanged, he became employed in 1980. Miller was notified in July of 1980 that he was no longer deemed incapable of engaging in substantial gainful employment and his disability benefits were terminated.[1] Miller continued working until January of 1981, when his anxiety attacks forced him to resign.

This case reveals serious administrative and judicial delay common in the processing of disability insurance claims. Miller applied for disability benefits and supplemental security income benefits on January 7, 1981. After his application was declined on initial consideration and reconsideration plaintiff requested a hearing before an administrative law judge (ALJ). The hearing was held on August 12, 1981. In a decision mailed to Miller on February 11, 1982, the ALJ denied both the disability and supplemental security income benefits applications. The Appeals Council denied his request for review on April 2, 1982, but agreed to reconsider his request after receiving a supplemental record. In a letter dated June 14, 1982, a member of the Appeals Council informed Miller that despite his "significant emotional problems," the supplemental records indicated no "deterioration in [Miller's] overall psychiatric status since the issuance of the administrative law judge's decision." The Appeals Council affirmed its earlier refusal to review the February 11, 1982, ALJ decision. Miller filed a petition for review in the federal district court; his claim was denied on October 31, 1983. Miller appealed to this court and argument was heard in June of 1984. Our decision is rendered approxi-

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. Miller requested reconsideration of the Social Security Administration's decision to terminate his benefits. The decision was affirmed, and Miller did not appeal. The 1980 termination is not at issue in this case.

mately three years and eight months after Miller's 1981 application for disability and supplemental security income benefits.

## Discussion

Miller argues that there is not substantial evidence on the record as a whole to support either the ALJ's determination that Miller's impairment was not severe enough to meet the disability criteria set forth in Category of Impairments, Mental, Functional nonpsychotic disorders, 20 C.F.R. §§ 404.1501–404.1599, Appendix 1, § 12.04 (1984) (hereinafter cited as Appendix 1, § 12.04),[2] or the ALJ finding that Miller could perform low-level, nonstressful jobs.[3]

Our review is limited to whether the administrative findings of fact are supported by substantial evidence on the record as a whole. *See Ledoux v. Schweiker*, 732 F.2d 1385, 1387 (8th Cir.1984); *Nettles v. Schweiker*, 714 F.2d 833, 835 (8th Cir.1983); 42 U.S.C. § 405(g) (1982). Because we review the record as a whole, we include in our review the supplemental record submitted and reviewed by the Appeals Council. The evidence is overwhelmingly inconsistent with the Appeals Council's observation that Miller suffered no "deterioration" between the time of the ALJ decision and the Council's consideration of the request for review. Rather, the record is replete

with observations made subsequent to the hearing before the ALJ that Miller's condition was degenerating. The 1981 psychiatric reports reviewed by the ALJ reflect little concern over Miller's suicidal or psychotic symptoms. The reports written in 1982 demonstrate that Miller's "state of mood was anxious and depressed;" he was "more depressed than usual." (Progress Note dated 2–12–82). The psychiatric evaluations revealed Miller's "suicidal ideation" (Progress Note dated 2–18–82) "which seems to be coming more prominent all the time." (Progress Note dated 2–22–82). The doctors reported that "[t]hese depressive symptoms are more severe than in the past and appear to be associated with mood congruent psychotic features." (Progress Note dated 3–2–82).

The record as a whole, including the supplemental 1982 reports, shows a chronic condition compatible with Miller's undisputed statements that he was unable to pursue substantial gainful activity. Miller has been under psychiatric treatment including various medications for his panic attacks and depression since 1976. The testimony shows that Miller was unable to sleep, or eat, and that he had recurrent suicidal thoughts. The medical evidence and Miller's testimony established that Miller experienced up to eight "panic attacks" per day.

**2.** Category of Impairments, Mental, Functional nonpsychotic disorders, 20 C.F.R. §§ 404.1501–404.1599, Appendix 1, § 12.04 (1984) (emphasis added) states:

*Functional nonpsychotic disorders* (psychophysiologic, neurotic, and personality disorders; addictive dependence on alcohol or drugs). With both A and B:

A. Manifested persistence of one or more of the following clinical signs:

1. Demonstrable and persistent structural changes mediated through psychophysiological channels (e.g., duodenal ulcer); or

2. Recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory; or

3. Persistent depressive affect with insomnia, loss of weight, and suicidal preoccupation; or

4. Persistent phobic or obsessive ruminations with inappropriate, bizarre, or disruptive behavior; or

5. Persistent complusive [sic], ritualistic behavior; or

6. Persistent functional disturbance of vision, speech, hearing, or use of a limb with demonstrable structural or trophic changes; or ·

7. Persistent, deeply ingrained, maladaptive patterns of behavior manifested by either:

a. Seclusiveness or autistic thinking; or

b. Pathologically inappropriate suspiciousness or hostility;

B. *Resulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.*

**3.** The district court found Miller did not meet the disability criteria set forth in Appendix 1, § 12.04 on the grounds that Miller had not shown he could not relate to other people and because his personal habits had not deteriorated. We find the record supports the opposite conclusions: Miller was not able to interact with others and his personal habits had deteriorated.

These attacks so restricted his daily activities that he was unable to work around other people and was afraid of open spaces.[4] Miller testified that due to these conditions he was unable to hold down a job.

Combining the original and the supplemental evidence, the ALJ's finding that Miller could obtain substantial employment and thus was not disabled is not supported by the record as a whole. The medical evidence shows that Miller's condition in 1982 was not improving. Rather, Miller's mental state was deteriorating. In *Dreste v. Heckler*, 741 F.2d 224, 226 n. 2 (8th Cir.1984) (per curiam) we said:

> We reject the ALJ's claim that [the claimant] did not have a twelve-month period of continuous disability. It is in-. herent in psychotic illnesses that periods of remission will occur. This does not, however, lead to the conclusion that the disability has ceased * * *.

*See also Lebus v. Harris*, 526 F.Supp. 56, 61 (N.D.Cal.1981) ("Realistically, a person with a mental impairment may be unable to engage in competitive employment as his ability to work may be sporadically interrupted by unforeseeable mental setbacks"). Although Miller is classified as having a nonpsychotic disorder, our analysis in *Dreste* is applicable. Functional nonpsychotic disorders are disabling. *See* Appendix 1, § 12.04. In *Bailey v. Califano*, 614 F.2d 146, 150 (8th Cir.1980), this court stated:

> The regulations specifically list functional nonpsychotic disorders as an impairment. These disorders must be manifested by recurrent and persistent periods of anxiety with tension and apprehension which result in a restriction of daily activities and construction of interests and deterioration in personal habits and seriously impaired ability to relate to other people. 20 C.F.R. § 404.1501, *et seq.*, App. 1 § 12.04 (1979).

After considering the record as a whole, we find that Miller has met the disability criteria set forth in Appendix 1, § 12.04. The medical testimony and evidence relating to Miller's attempts to maintain a job support Miller's contention that he suffers from a nonpsychotic disorder and is incapable of continued employment. *See Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir.1982) (finding that medical evidence showed unequivocally that the claimant suffered from a personality disorder). The supplemental record demonstrates that Miller's symptoms are chronic and reoccurring and that Miller was undergoing treatment for his condition. We reverse the district court's decision and remand with an order that plaintiff Miller be awarded benefits under both Title II and Title XVI of the Act.

Judgment reversed and remanded.

---

**4.** The record is filled with descriptions of Miller as nervous, anxious, and slightly disheveled. Miller testified, for example, that he was forced to quit his job as a janitor in a dime store because of his discomfort "in that store around people." Further, the vocational expert testified that Miller possibly could engage in certain low-stress types of employment, but that such work might exacerbate Miller's problems because the jobs would not challenge him intellectually.