**Loren CARLSON, Plaintiff,**

v.

**Donna E. SHALALA, in her capacity as Secretary of U.S. Department of Health and Human Services, Defendant.**

**No. CV–N–92–393–ECR.**

United States District Court, D. Nevada.

Sept. 13, 1993.

Caption Amended Nov. 12, 1993.

Minute Order Granting Reconsideration Nov. 12, 1993.

David Kladney, Reno, NV, for plaintiff.

Douglas N. Frazier, U.S. Atty. by Shirley Smith, Asst. U.S. Atty., Reno, NV, for defendant.

## ORDER

EDWARD C. REED, Jr., District Judge.

### I. INTRODUCTION

This is an action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c) for judicial review of the final administrative decision of the Secretary of Health and Human Services determining that Plaintiff Loren J. Carlson is not entitled to a period of disability and to disability insurance benefits under the Social Security Act.

This Order is made and based on the Complaint filed June 16, 1992 (Doc. # 1); the Answer filed August 17, 1992, (Doc. # 6); Supplemental Filing of Transcript of Record (Doc. # 8); Motion for Reversal/Remand (Doc. # 10) filed on October 1, 1992; Defendant's Opposition to Plaintiff's Motion for Reversal/Remand filed on November 23, 1992 (Doc. # 11); and Plaintiff's Reply to Defendant's Opposition for Reversal And/Or Remand (Doc. # 12) filed on December 8, 1992.

### II. ADMINISTRATIVE PROCEEDINGS

Plaintiff filed a claim for Social Security Disability or Disability Insurance Benefits on January 8, 1990 (AR 59–62). On July 5, 1990, Plaintiff's claims for benefits were denied. Plaintiff then filed a Request for Reconsideration and, upon reconsideration, his claim was denied. After timely filing of a Request for Hearing, an evidentiary hearing was held on June 11, 1991, before Administrative Law Judge John M. Bodley (ALJ). Plaintiff was represented by David Kladney, Attorney at Law. Plaintiff testified at the hearing. The ALJ's decision was issued on August 19, 1991, denying Plaintiff's claims for benefits (AR 10–15). Upon timely filing of a Request for Review by Plaintiff, the Appeals Council reviewed the determination and affirmed the decision of the ALJ on April 23, 1992 (AR 3–4) which was the Secretary's final decision. The instant action was initiated on June 16, 1992. (Doc. # 1).

### III. BACKGROUND

Loren Carlson, was born on February 15, 1937; thus, he is now fifty-six (56) years old. "His only relevant work experience involved working as a card room attendant, though he has not worked since 1979. He believes that he has been disabled since December 31, 1979, primarily as a result of a severe mental disorder." (ALJ's Decision, AR 10).

Plaintiff's education consists of approximately three years of college plus military schooling in teletype, cryptography, and purchasing (AR 38). He was in the military four years and two months, which consisted of approximately three and one-half years in the Air Force and less than a year in the Active Army Reserve (AR 40–41). After his discharge from the service, Plaintiff worked for the Federal Government at a communications center at Fort Robinson, Washington, and as a purchasing agent at the Department of Defense.

Since 1968, Plaintiff has been diagnosed and rediagnosed as suffering from paranoid schizophrenia, manifested by auditory and visual hallucinations, and delusions of persecution. (AR 11). He has been hospitalized for this mental condition on at least four occasions since December 1979, the date from which he is claiming disability (AR 11–12; see also AR 322). He has been diagnosed as suffering from psychotic decompensation and paranoid ideation, as well as bipolar and dependent personality disorder since 1990. Id. Medication was successful in reducing plaintiffs psychotic symptoms during a remission from mid–1983 until he suffered a severe decompensation in 1990 (AR 11–12, 324).

### IV. DISCUSSION

#### A. APPLICABLE LEGAL STANDARDS AND THE ALJ'S DECISION

To be considered disabled, a person must be unable to do any substantial gainful work due to a medical condition which has lasted or is expected to last for at least twelve continuous months. The condition must be severe enough to keep a person from working not only in his or her usual job but in any other substantial gainful work, and the medical condition must be disabling at a time when the person meets the earnings requirement. A person's age, education,

training, and work experience are taken into consideration. See 42 U.S.C. § 423 (1988).

The Secretary has adopted regulations, authorized by 42 U.S.C. § 405(a), which establish a formalized sequential order of considerations to determine whether a claimant is disabled. These are: (1) whether the person is working at a substantial gainful activity; (2) whether the person has an impairment which significantly limits his physical or mental ability to do basic work activities (and is thereby a "severe impairment"); (3) whether the person's impairment meets or equals a listed impairment in Appendix I and meets the duration requirement; (4) whether the impairment prevents the person from doing past relevant work; and (5) whether the impairment prevents the person from doing any other work. It is at this stage that the residual functional capacity, age, education, and past work experience are taken into consideration. If a claimant is found to be disabled or not disabled at any point in the review, the review will not proceed further. 20 C.F.R. § 404.1520.

The ALJ found as follows:

After careful consideration of the entire record, the undersigned Administrative Law Judge makes the following findings:

1. The claimant met the special earnings requirements of the Act on December 31, 1979, and continued to meet them through June 30, 1983.

2. The claimant is not presently engaging in substantial gainful activity.

3. The medical evidence establishes that for the period from December 31, 1979, to February 1983, the claimant was severely impaired due to chronic paranoid schizophrenia, the severity of which met the criteria for disability pursuant to the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4.

4. Beginning in February 1983 and continuing to January 1986, the medical evidence demonstrates significant improvement in the claimant's impairment on the basis of wide-ranging, daily activities, normal social functioning, and other evidence that his impairment resulted in only slight abnormalities, and did not impose significant work-related limitations.

5. As of June 30, 1983, and continuing to January 1986, the claimant did not have a severe impairment. (20 CFR 404.1521).

6. With regard to the period of February 1983 to January 1986, allegations by the claimant that he was severely impaired by a mental disorder are not credible in light of his wide-ranging, daily activities and social functioning indicated in the record, the effectiveness of his antipsychotic medication, and the evidence of his recent mental decompensation which has seriously impaired his memory and ability for maintaining attention and concentration.

7. Assuming *arguendo* that the claimant was mentally incompetent, the period during which he had to file an application for a (closed) period of disability (i.e., for the period from December 1979 through February 1983) ended in February 1986. (20 CFR 404.322(b))

### DECISION

It is the decision of the undersigned Administrative law Judge that, based on the application filed on January 8, 1990, the claimant is not entitled to a period of disability or disability insurance benefits under Section 216(i) and 223, respectively, of the Social Security Act, as amended.

(ALJ's Decision, AR 10–15)

### B. STANDARD OF REVIEW AND ANALYSIS

Within ninety days of a hearing, "[t]he administrative law judge shall issue a written decision which gives the findings of fact and the reasons for the decision. The decision must be based on evidence offered at the hearing or otherwise included in the record." 20 C.F.R. § 416.1453. In this action, the ALJ reviewed twenty-six exhibits (listed at AR 1), including voluminous medical records.

■ The Secretary's regulations require the claimant to prove his or her disability by providing medical evidence. 20 C.F.R. § 404.1512 (1993). It is obvious, therefore, that the claimant bears the primary burden of establishing a disability. This concept has continually been upheld by the Ninth Circuit.

See, e.g., *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir.1986), *Swanson v. Secretary of HHS*, 763 F.2d 1061, 1064 (9th Cir.1985); see also, *Lyle v. Secretary of HHS*, 700 F.2d 566 (9th Cir.1983) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

■ In reviewing the ALJ's denial of disability benefits, a court will affirm only if the findings are supported by substantial evidence and the Secretary applied the correct legal standards. *Sanchez v. Secretary*, 812 F.2d 509 (9th Cir.1987). · Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

## C. *STATUS OF IMPAIRMENT WHEN DATE LAST INSURED*

■ The initial question in this action is whether there is substantial evidence that Plaintiff Loren J. Carlson was disabled as of June 30, 1983, the date he was last insured for disability insurance benefits. If he was not, he would not be eligible for any Social Security disability benefits. 20 C.F.R. § 404.131 (1993).

Administrative Law Judge John M. Bodley recognized both Plaintiff's "long history of mental problems" (AR 11), and that Plaintiff is "presently disabled due to both physical and mental impairments ..." (AR 12). But the ALJ based his determination against Plaintiff upon a finding that Plaintiff's mental impairment had improved to such a degree that he was no longer disabled as of June 30, 1983. He concluded this despite a report by the Secretary's own staff psychologist, E.J. Dehne, M.D., stating "the medical evidence shows that you were severely disabled from your date of onset, December 31, 1979 due to your mental condition ... *until October 1, 1983* (AR 64) (emphasis provided).

The preceding statement should be conclusive as to Plaintiff's condition on June 30, 1983. But the ALJ's finding is further controverted by evidence of the events taking place prior to the date Plaintiff was last insured. In the nine months prior to the June 30, 1983 cutoff date, Plaintiff was hospitalized *three* times for the onset of severe schizophrenic symptoms. The ALJ's decision sets out the circumstances of Plaintiff's involuntary hospitalization from October to November of 1982:

> [H]e was found by the police and observed to be disheveled and confused and admitted to command auditory hallucinations telling him not to cooperate with his medical treatment. During his hospitalization, he was somewhat guarded and displayed inappropriate laughter and complained of auditory hallucinations. During his hospitalization ... he was found unable to meet health and safety needs and to be gravely disabled and obese.

(AR 11). The passage goes on to describe how Plaintiff was hospitalized again the following month (December 1982) when he reported hearing male and female voices and experiencing visual hallucinations of shadows and statues. *Id.*

Plaintiff was again hospitalized in February 1983 with complaints of paranoid ideation. *Id.* This was approximately four months before the expiration of his disability insurance coverage. The ALJ gives great weight to the progress notes for the period following this February 1983 hospitalization to determine that Plaintiff, who has a twenty-five year history of paranoid schizophrenia with intermittent remissions, was no longer disabled after a four-month period of group therapy and medication. A progress note from the Carson Mental Health Clinic dated as late as April 1, 1983 makes reference to Plaintiff's "separate 'reality' going on in his mind" (AR 315).

The ALJ's decision and the motion papers make reference to Plaintiff organizing a bowling game and a card game among members of his therapy group in Spring 1993 (AR 11–12) as support for his determination. The decision notes records indicating that Plaintiff appeared to be functioning normally, and that he appeared to be dealing well with stress. *Id.* But the medical records for this time period make no reference to Plaintiff's ability to endure any type of employment, only that his schizophrenic symptoms were remitting.

As mentioned above, the Secretary's own staff psychologist determined that Mr. Carlson was disabled until October 1983. That being the only medical determination presented for the relevant time period, there is no reasonable basis in the record for the Administrative Law Judge to further shorten the period of disability. Therefore, this Court concludes that the only reasonable evidence in the administrative record indicates that Plaintiff was disabled on June 30, 1983.

### D. THE EFFECT OF REMISSION ON DISABILITY

■ The Secretary's Regulations state that once entitlement to disability has been found to exist, the Secretary must determine if there has been any medical improvement in the Claimant's impairments, and whether any improvement is related to the claimant's ability to do work. 20 C.F.R. § 404.1594(a) (1993). If the Secretary finds medical improvement related to the claimant's ability to do work, the burden shifts to the Secretary to further show that the claimant is currently able to engage in substantial gainful activity before the Secretary can find that the claimant is no longer disabled. *Id.*

Although no benefits were ultimately awarded to Plaintiff, the ALJ's findings, and this Court's findings described in the prior section of this order unequivocally establish that Plaintiff was "Severely impaired due to chronic paranoid schizophrenia, the severity of which met the criteria for disability pursuant to the listing of impairments ..." between December 31, 1979 and *at least* October 1, 1983. *See supra* part IV.C. and ALJ's Decision, Finding 2 (AR 14). He therefore would have been entitled to the benefits for that period. Thus, it is incumbent upon the Secretary to show both that any medical improvements in Plaintiff's mental impairment between 1983 and 1990 related to Plaintiff's ability to do work, and that he was able to engage in substantially gainful employment before he can be deemed no longer disabled. This Court finds that the record, as it stands, does not support such a conclusion. Further, there is no evidence that the Secretary or the ALJ followed the procedures outlined in this section of the regulations when they determined Plaintiff was no longer disabled.

■ A "medical improvement" is any decrease in the severity of the claimant's impairment based upon positive changes in symptoms. 20 C.F.R. § 404.1594(b)(1). But a medical improvement ·will not be found where an individual's impairments are subject to temporary remission. *Id.* § 404.-1594(c)(3)(iv). This section states:

> In assessing whether medical improvement has occurred in person's with this type of impairment, we will be careful to consider the longitudinal history of impairments, including the occurrence of prior remission, and prospects for future worsenings.

*Id.* This provision essentially limits the definition of "medical impairment." If the Secretary finds the remission to be temporary, then the inquiry stops, and claimant's entitlement to disability benefits continues.

■ In this case, Plaintiff's symptoms appeared to be in remission for several years after 1983. He was constantly and heavily medicated for his mental impairment and apparently experienced a decrease in symptoms such as hallucinations and ideation until an apparent relapse and hospitalization in July 1990. But Plaintiff did report five "episodes" in the four years prior to 1988 (AR 288). As Plaintiff carefully listed and summarized in his motion for remand, his "medical history is replete with constant and continuing psychiatric episodes." Motion 6 (Doc. # 10).

■ Despite Plaintiff's history of remission and decompensation, there is no indication in either the ALJ's decision or the Secretary's reports that the temporary nature of Plaintiff's remission was properly considered. To the contrary, the decision extensively documents Plaintiff's history of temporary remissions (AR 11–13), and then goes on to simply assert a "significant improvement in the claimant's impairment" (AR 14). Thus, it appears the ALJ failed to apply the appropriate legal standard under the regulations.

From the record, considering Plaintiff's longitudinal history, it would be entirely reasonable to conclude that Plaintiff's partial remission between late 1983 and 1990 was

temporary within the meaning of this regulation, and therefore not a "medical improvement."

■ Even if one supposes Plaintiff's remission was not temporary, the regulations require the Secretary to then determine whether the medical improvement affects the claimant's ability to do work. 20 C.F.R. § 404.1594(c)(2) (1993). This is determined by assessing what the person can still do despite an impairment (i.e., the claimant's "residual functional capacity"). *See id.* § 404.1594(b)(4). Several factors, including a person's age, exertional abilities, memory, and judgment are considered. *Id.* "Studies have also shown that the longer an individual is away from the workplace and is inactive, the more difficult it becomes to return to ongoing gainful employment." *Id.* § 404.-1594(b)(4)(iii). A person's residual functional capacity is also used to determine the third step of this review, whether the claimant can engage in substantial gainful activity. *Id.* § 404.1594(b)(4)(i).

■ Again, aside from minimal discussion in the decision concerning Plaintiff's daily activities, such as driving, card playing, and an attempt to return to college, the ALJ fails to discuss some factors that are important to the determination of Plaintiff's residual functional capacity. Again, this court concludes that the ALJ failed to properly apply the standards outlined in this regulation. As stated above, because the ALJ came to a determination of an initial severe disability for the time preceding 1983, and this claim was not for a "closed period" as concluded in the decision, the ALJ must require the Secretary to prove with substantial evidence that Plaintiff could engage in substantial gainful activity.

■ Had the correct standards been applied, it is still unlikely that the Secretary could make such a showing on this administrative record. Plaintiff was 46 years of age at the time the ALJ claims the disability ended. His medication caused him to feel lethargic and contributed to his weight gain of almost 100 pounds during his remission (*see* AR 311). As discussed above, he was also recovering from a grave mental disability which caused him to be hospitalized several times within one year of the 1983 date on which he was determined to be capable of substantial gainful employment. *See supra* part IV.C.

While there is evidence in the administrative record that Plaintiff was playing cards for a living, there was further evidence that he was "into the club for $1800" at one point. (AR 308). The ALJ also notes that Plaintiff signed-up for a college course. (AR 12). But his ability to succeed or to cope with the college course is entirely undocumented. Plaintiff's reply asserts that he was unable to complete the courses he attempted. Reply 6 (Doc. # 12). Overall, while there was some evidence that there was a considerable remission while he was on medication in the mid–1980s, the reasonable interpretation of the evidence suggests that Plaintiff's inability to find work due to his severe mental impairment has continued significantly since his initial diagnosis in 1968.

Case law supports the proposition that "[t]he question is not whether the claimant could get and physically perform a job during a period of remission, but rather whether the claimant could hold a job for any significant length of time." *McGee v. Bowen,* 647 F.Supp. 1238 (N.D.Ill.1986) (citing *Singletary v. Bowen,* 798 F.2d 818, 822 (5th Cir.1986) and *Miller v. Heckler,* 747 F.2d 475, 478 (8th Cir.1984)).

The difficulty with psychiatric impairments such as Plaintiff's is outlined in another case:

> While the mere existence of symptom-free periods may negate a finding of disability when a physical impairment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of the claim.
>
> . . .
>
> . . . the relevant inquiry is whether a claimant can engage in any substantial gainful activity during the symptom-free intervals, given the likelihood, frequency, and severity of relapses in his mental illness.

*Lebus v. Harris,* 526 F.Supp. 56, 59–61 (N.D.Cal.1981).

Thus, even assuming Plaintiff's remission was not temporary, there is insufficient evidence on the record for the Secretary to assert that Plaintiff is capable of engaging in substantial gainful activity.

## V. CONCLUSION AND ORDER

The Secretary's own physician concedes that Plaintiff was disabled on June 30, 1983. Therefore, there is no question but that Plaintiff was disabled on his date last insured.

Further, the inadequacy of evidence and the ALJ's apparent failure to apply the Secretary's regulations leads this Court to conclude that the evidence is insufficient to support the ALJ's findings. The only reasonable finding based on the record is that Plaintiff's remission was temporary within the meaning of the regulations, and therefore not a medical improvement. Even if the remission were not considered temporary, evidence of Plaintiff's residual functional capacity shows that it would be unreasonable to expect him to engage in substantial gainful activity.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal/Remand (Doc. # 10) is *GRANTED,* and the Administrative Law Judge's Decision of August 19, 1991 is *REVERSED.* Plaintiff is found to be disabled as of December 31, 1979, and is entitled to disability insurance benefits as provided for in the Social Security Act accordingly.

### MINUTE ORDER GRANTING RECONSIDERATION

This Court found that plaintiff in this matter was entitled to disability benefits due to his disability which was found to have begun in December 31, 1979. (See Court Order document # 14). However, plaintiff did not actually apply for disability insurance benefits until January 8, 1990.

The Social Security Act provides that the application for disability insurance benefits has a maximum twelve month retroactive effect. 42 U.S.C. § 423(b); *See also Green v. Mathews,* 550 F.2d 458 (9th Cir.1977); *Marcia v. Sullivan,* 900 F.2d 172, 175 n. 5 (9th Cir.1990); *Jones v. Bowen,* 657 F.Supp. 342, 344 (N.D.Cal.1987). The Court chides plaintiff's counsel on his submission of an unpublished disposition from the District Court of Northern California which in a cursory fashion attaches an additional five months of retroactive eligibility. This opinion serves no precedential value to this court.

IT IS, THEREFORE, HEREBY ORDERED that the second to the last sentence of this Court's Order of September 13, 1993 (document # 14) is AMENDED to read as follows: [Editor's Note: Change incorporated for publication.]