IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-41432
_____


JAMES R. WATERS,

                                        Plaintiff-Appellant,

                        versus

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY,

                                        Defendant-Appellee.

_____

                Appeal from the United States District Court
                    for the Eastern District of Texas
_____

                        January 8, 2002

Before JOLLY and PARKER, Circuit Judges, and SPARKS,[1] District
Judge.

E. GRADY JOLLY, Circuit Judge:

        Waters sought disability benefits from the Social Security

Administration based on a broken ankle and other related injuries.

An Administrative Law Judge ("ALJ") awarded Waters disability for

a closed period –- that is, between November 27, 1993 and November

5, 1996.  In determining the cessation date for the period, the ALJ

principally placed the burden on Waters to show that his disability

continued past this date.  Following the lead of a number of our

_____

        [1]District Judge of the Western District of Texas, sitting by
designation.

sister circuits, we adopt the "medical improvement" standard in these closed period cases. This standard places the initial burden on the government to show that the claimant's disability has ended as of the cessation date. We thus reverse and remand to the district court with instruction to remand to the Social Security Administration for further proceedings not inconsistent with this opinion.

I

On March 1, 1995, Waters applied for both disability benefits and supplemental security income based on an ankle injury he suffered when he slipped on some ice while using a sledge hammer. The Commissioner of the Social Security Administration denied Waters benefits. Waters requested a hearing before an administrative law judge. At the hearing, the ALJ decided to send Waters to a doctor for a conclusive evaluation. Waters agreed to see the doctor. The next month, Dr. James Harris examined Waters on behalf of the ALJ. Dr. Harris reported that Waters' broken ankle was healing nicely, and that Waters "has many signs and symptoms that appear to be nonphysiologic." Based on this report, the ALJ issued a partially favorable ruling -- effectively finding that Waters had no continuing disability but that he did have a disability for the closed period between the time of his ankle injury on November 27, 1993 and his visit to Dr. Harris on November 5, 1996. The Appeals Council denied Waters' request for review.

Waters then acquired representation and filed a complaint in the district court. The complaint alleged, <u>inter</u> <u>alia</u>, that the ALJ had applied the wrong legal standard to evaluate the cessation date for his closed period of benefits. This is the only issue we address in this appeal.

The district court, adopting the magistrate judge's recommendation, affirmed the Commissioner. Waters now appeals.

II

In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review. <u>Frith v. Celebrezze</u>, 333 F.2d 557, 560 (5th Cir. 1964). In the Fifth Circuit, appellate review is limited to (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. <u>See</u> <u>Estate of Morris v. Shalala</u>, 207 F.3d 744, 745 (5th Cir. 2000)(citations omitted). In this case, the ALJ used a five-step sequential analysis to determine the beginning and the end date for the "closed period" of Waters' disability. Courts and the Social Security Administration typically use this type of analysis to decide whether -- as a threshold matter -- a person is disabled. The five-step analysis is:

> First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [his] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant

3

must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested.

Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991)(internal citations and quotation marks omitted). It is important to note that the claimant bears the burden of proof with respect to the first four steps of the analysis, with the burden shifting to the Commissioner for the final step. Jones v. Bowen, 829 F.2d 524, 526 (5th Cir. 1987). In the instant case, the ALJ terminated the analysis at step four, finding that "subsequent to November 5, 1996, the claimant retains the residual functional capacity to perform the exertional demands of light work, or work which requires maximum lifting of twenty pounds and frequent lifting of ten pounds." Basically the ALJ found that Waters had failed to prove that his ankle injury prevented him from doing past relevant work after November 5, 1996, the date of his visit with Dr. Harris. Accordingly, he was not disabled after this date.

Waters argues that the government should have to prove "medical improvement" when defining the cessation date for a closed period of benefits. The primary difference between the standard employed by the ALJ and the "medical improvement" standard advocated by Waters is the allocation of the burden of proof.

4

Under the medical improvement standard, the government must, in all relevant respects, prove that the person is no longer disabled. See 42 U.S.C. § 423(f); Griego v. Sullivan, 940 F.2d 942, 943-44 (5th Cir. 1991). In contrast, as noted above, the ALJ in this case placed the burden on Waters to show that his ankle injury prevented him from doing past relevant work after November 5, 1997 (to prove step four in the five-step disability threshold analysis).

A number of the circuits have adopted the "medical improvement" standard in cases similar to the case before us. See Shepherd v. Apfel, 184 F.3d 1196, 1200 (10th Cir. 1999) ("We are persuaded by these other circuits that applying the medical improvement standard to cases involving a closed period of disability is consistent with the language and legislative purpose in the Reform Act."); Jones v. Shalala, 10 F.3d 522 (7th Cir. 1993) (applying the medical improvement standard in the review of closed period case); Chrupcala v. Heckler, 829 F.2d 1269, 1274 (3d Cir. 1987) ("Fairness would certainly seem to require an adequate showing of medical improvement whenever an ALJ determines that disability should be limited to a specified period."); Pickett v. Bowen, 833 F.2d 288, 292 (11th Cir. 1987) ("Consequently, we discern from the broad remedial policies underlying the Disability Amendments that Congress intended to reach 'closed period' claimants.").[2]

---

[2]In fact, at oral argument the government conceded that this was the appropriate standard for finding the cessation date in

5

The Fifth Circuit, however, has stated in dicta that the medical improvement standard applies <u>only</u> in termination cases -- that is, where the government seeks to halt the ongoing payment of benefits. <u>See</u> <u>Richardson v. Bowen</u>, 807 F.2d 444, 445 (5th Cir. 1987). In <u>Richardson</u>, at a disability review hearing, an ALJ terminated the claimant's disability payments. Rather than timely appealing this ruling, the claimant filed a new application asking the Commissioner to reopen his case. This request was denied. <u>Id.</u> at 445. The <u>Richardson</u> court was thus confronted with deciding the conditions under which the Commissioner could refuse to reopen a case; the issue of the applicability of the medical improvement standard to closed period cases was not squarely before the court. <u>See</u> <u>Shepherd</u>, 184 F.3d at 1200 n.4. Thus, any statements in <u>Richardson</u> regarding the limitations on the use of the medical improvement standard are not binding with respect to the issue in this case.[3]

Approaching the issue as one of first impression, we think that our sister circuits' approach is more persuasive than that suggested by the <u>Richardson</u> dicta. Through the Reform Amendments,

closed period cases.

[3]In <u>Bowling v. Shalala</u>, 36 F.3d 431 (5th Cir. 1994), a panel of the Fifth Circuit applied, without any analysis, the five-step sequential analysis for determining disability in a closed period case. Because the <u>Bowling</u> court was not confronted with the issue of what was the appropriate standard of review in closed period cases (there is no discussion of this issue), the case does not stand for the proposition that the medical improvement standard is inappropriate.

6

Congress explicitly required a showing of medical improvement before the Commissioner could halt the payment of benefits in a termination case. See 42 U.S.C. § 423(f)(1); Griego v. Sullivan, 940 F.2d at 943-44. In the typical disability case, a claimant's application for benefits is decided while he is under a continuing disability. Once the application is granted, payments continue in accord with that decision. Termination of the benefits then involves a subsequent hearing -- a termination case -- in which the Commissioner reviews (and decides whether to terminate) the continued payment of benefits. In contrast, in a closed period case, "the decision-maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." Pickett v. Bowen, 833 F.2d at 289 n.1. Thus, in closed period cases, the ALJ engages in the same decision-making process as in termination cases, that is, deciding whether (or, more aptly, when) the payments of benefits should be terminated. Accordingly, we follow the Tenth, Seventh, Eleventh, and Third Circuits in holding that the medical improvement standard applies to the cessation date in closed period cases.[4] The district court's judgment is reversed

---

[4]Because we are reversing the district court and remanding for further consideration, the government's motion for remand is denied on grounds of mootness. Furthermore -- also essentially for reasons of mootness -- we see no need to address Waters' due process claims that he was effectively denied counsel and that he signed a constitutionally impermissible waiver of his right to examine post-hearing medical evidence. He is now represented by counsel and, in the light of this appeal that remands for a

and the case is remanded with instruction to remand to the Social Security Administration for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED

---

rehearing, there is no indication that he has suffered any injury as a result of these alleged constitutional violations. To further assure this fact, we hold that any waivers made prior to this appeal are not binding in any proceeding conducted in accordance with this remand.