**Leeter D. ROBBINS, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security,[1] Defendant.**

**No. 01–1072–JAR.**

United States District Court, D. Kansas.

April 11, 2002.

---

1. Jo Anne B. Barnhart became Commissioner of Social Security on November 9, 2001. Therefore, pursuant to Rule 25(d)(1) of the

Federal Rules of Civil Procedure, Ms. Barnhart is substituted as the party defendant.

David H. M. Gray, Gragert, Hiebert & Gray, Wichita, KS, for Plaintiff.

Emily B. Metzger, Office of United States Attorney, Wichita, KS, for Defendant.

## ORDER ADOPTING RECOMMENDATION AND REPORT

ROBINSON, District Judge.

Ten days having passed, and no written objections being filed to the proposed findings and recommendations filed on March 20, 2002, by Magistrate Judge John Thomas Reid, and after a de novo determination upon the record pursuant to Fed.R.Civ.P. 72(b), the Court accepts the recommended decision and adopts it as its own.

## RECOMMENDATION AND REPORT

REID, United States Magistrate Judge.

This is an action seeking review of a final decision in which the Commissioner of Social Security decided that plaintiff's disability ceased on January 24, 1991 and awarded a "closed period" of disability. Neither party contests the award of benefits through March 1991, but plaintiff claims there has been no medical improvement in her condition. The matter has been fully briefed by the parties and referred to this court for a recommendation and report. As explained hereinafter, the court recommends the decision of the Commissioner be reversed and this case be remanded for an immediate award of benefits through June 1998 and for further proceedings regarding whether medical improvement occurred thereafter.

## I. Background

Plaintiff was awarded disability benefits from 1977 through 1982. (R. 17). In December, 1982, the Commissioner determined that plaintiff's disability ceased and terminated payment of benefits. (*Id.*). Plaintiff subsequently made application for disability insurance benefits in 1983, twice in 1984, in 1990, and twice in 1995. (R. 79, 83, 376, 380, 381, 386, 396). Plaintiff alleges disability due to Crohn's disease and complications therefrom.

Plaintiff's most recent filing was dismissed by the Administrative Law Judge (ALJ) on January 24, 1997, finding that plaintiff could not be found disabled prior to her date last insured of December 31, 1985. (R. 348). Consequently the ALJ determined there was no issue before the Commissioner which would allow for the payment of benefits. (R. 349). Plaintiff appealed, and the Appeals Council remanded to the ALJ for further proceedings to determine whether plaintiff was under a disability on or before the correct date last insured, December 31, 1986. (R. 352–53). The ALJ held a pre-hearing conference on February 4, 1998 at which it was established that the notice on the December 27, 1983 claim was defective, the intervening decisions were not entitled to res judicata effect, and it was proper to consider whether plaintiff's earlier period of disability continued after 1982. (R. 17).

The ALJ held a hearing on May 27, 1998 and issued a partially favorable decision on June 29, 1998, in which he determined that plaintiff's disability continued from Janu-

ary, 1977 to January 24, 1991 and ceased thereafter. (R. 25). The ALJ found that plaintiff's date last insured extended to March 31, 1994 (R. 18), but that she was not disabled at any time after January 1991.(*Id.*). On the basis of those findings, the ALJ determined that plaintiff is eligible for disability insurance benefits from January 1977 through the end of March 1991, but not thereafter. (*Id.*). The ALJ's findings include the following:

3. The medical evidence establishes that the claimant has Crohn's disease, impairments [sic] which are severe within the meaning of the regulations but which do not meet or equal the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

5. The claimant has a residual functional capacity for sedentary work with occasional limitations regarding bending, stooping and with the provision to be near a bathroom. For periods prior to January 1991, the claimant had pain and fatigue which further reduced the residual functional capacity to less than full time work. As of January 24, 1991, the evidence indicates medical improvement allowing for full time sedentary work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant cannot make a successful vocational adjustment to any jobs which exist in significant numbers in the national economy for periods prior to January 24, 1991. A finding of "disabled" was appropriate under 20 CFR 404, Subpart P, Appendix 2, Section 201.00(h).

11. As of January 24, 1991, the claimant had the capacity for a range of sedentary work. A finding of "not disabled" is appropriate within the framework of 20 CFR Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.15. Representative examples of work in the Wichita area include a civil service clerk, referral clerk, hand grinder and small [p]arts painter.

12. The claimant has continued under a disability, as defined in the Social Security Act from January 1977 to January 1991, but not thereafter.

(R. 24–25). Based upon his findings, the ALJ determined plaintiff was disabled from January 1977 through January 24, 1991 and awarded a period of disability with entitlement ending at the end of March 1991. (R. 25). Plaintiff requested a review of the hearing decision and submitted: a brief, additional medical records, and a statement from her treating physician for consideration by the Appeals Council. (R. 11–12, 410–69). The Appeals Council received the additional evidence and made it a part of the record. (R. 8). Nonetheless, the council concluded there was no basis either in the regulations or the additional evidence to change the ALJ's decision and, therefore, denied plaintiff's request for review. (R. 6). Because the Appeals Council denied plaintiff's request for review, the ALJ decision stands as the final decision of the Commissioner. *Clifton v. Chater*, 79 F.3d 1007, 1008 (10th Cir.1996). Plaintiff filed this action seeking review of the Commissioner's decision and alleging: that the ALJ improperly shifted the burden of proof to plaintiff; that considering the new evidence submitted to the Appeals Council, the ALJ's step three analysis, analysis of plaintiff's credibility, and rejection of plaintiff's treating physician opinion are not supported by substantial evidence; and that the ALJ did not apply the correct legal standard to the issue of whether plaintiff has transferable skills.

## II. Standard of Review

■ The Social Security Act (the Act) provides that final decisions of the Commissioner shall be subject to judicial review. 42 U.S.C. §§ 405(g). "[T]he findings of the Commissioner as to any fact, if

supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court shall review the Commissioner's decision to determine only whether the decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala,* 21 F.3d 983, 984 (10th Cir.1994); *Marshall v. Chater,* 75 F.3d 1421, 1425 (10th Cir. 1996). Substantial evidence is more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Gossett v. Bowen,* 862 F.2d 802, 804 (10th Cir.1988). The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Id.* at 804–05; *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

■ Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan,* 794 F.Supp. 1045, 1047 (D.Kan.1992). The court shall examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the decision is supported by substantial evidence in the record. *Glenn,* 21 F.3d at 984.

An individual shall be determined to be under a disability in the first instance only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of twelve months. The claimant's physical or mental impairment or impairments must be of such severity that she is not only unable to perform her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

## A. Disability Sequential Evaluation Process

The claimant has the burden of proving a disability that prevents her from engaging in her prior work activity. The Commissioner has established a five-step process to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2001); *Ray,* 865 F.2d at 224; *Gossett,* 862 F.2d at 805. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988). In step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity at the time of the determination. *Id.* Step two considers whether the claimant has a medically severe impairment or combination of impairments which prevents the claimant from performing work she has performed in the past. *Id.* at 750–51.

In step three, the Commissioner "determines whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.* at 751 (quoting *Bowen v. Yuckert,* 482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)). If the claimant has a listed impairment or its equivalent, she is conclusively presumed to be disabled and is entitled to benefits. *Id.* If not, the decisionmaker must continue to the fourth step— whether the claimant has shown that the

impairment prevents her from performing work she has performed in the past. *Id.* If the claimant is able to perform work she has performed in the past, she is not disabled. *Id.* If not, the decision-maker must evaluate step five, whether the claimant has the residual functional capacity (RFC) in light of her age, education, and work experience, to perform other work in the national economy. *Id.*

In step five, the burden shifts to the Commissioner to show that the claimant retains the ability to do other work activity and that jobs the claimant could perform exist in the national economy. *Id.* The Commissioner meets this burden if the decision is supported by substantial evidence in the record viewed as a whole. *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir.1993); *Ray,* 865 F.2d at 224; *Gossett,* 862 F.2d at 805. A claimant is placed in one of five RFC categories depending on her capacity for work activity on a regular and continuing basis. *Channel v. Heckler,* 747 F.2d 577, 579 (10thCir.1984). A claimant must be able to perform the full range of such work on a daily basis and must possess physical capacities equal to the strength requirements for most of the jobs in that range in order to be placed in a particular RFC category. *Id.* at 579–80, 747 F.2d 577. A claimant is entitled to benefits if the Commissioner cannot establish that the claimant retains the capacity to perform alternative work activity and that this specific type of job exists in the national economy. *Williams,* 844 F.2d at 751.

## B. Review of Continuing Disability

The Act provides that the Commissioner shall review disability cases to determine continuing eligibility. 42 U.S.C. § 416(i). The Commissioner may terminate benefits of an individual previously determined to be disabled if she finds that the physical or mental impairments which formed the basis for award of benefits have ceased, do not exist, or are no longer disabling. Id. at § 423(f). Under the Act, the Commissioner has promulgated regulations to decide whether disability has ended. 20 C.F.R. §§ 404.1588—404.1599.

In accordance with the Act, the regulations provide for termination of benefits if there has been medical improvement in the recipient's impairment(s) that relates to the recipient's ability to work, and if the recipient is now able to engage in substantial gainful activity. *Id.* § 404.1594(a). The regulations define "medical improvement" as:

> "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)."

*Id.* § 404.1594(b)(1).

## C. Termination of Benefits Sequential Evaluation Process

The regulations provide an eight-step sequential evaluation process for determining whether to terminate benefits. *Id.* § 404.1594(f). If at any point in the process the Commissioner determines there is sufficient evidence to find that the claimant is unable to engage in substantial gainful activity, the review may cease. *Id.* In step one, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1594(f)(1). The Commissioner determines whether plaintiff currently has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 at step two of the process. *Id.* § 404.1594(f)(2). If so, the

claimant's disability will be found to continue. *Id.*

At step three, the Commissioner determines whether there has been medical improvement in the claimant's condition since the most recent favorable decision. *Id.* §§ 404.1594(f)(3) and (b)(1). If there has been medical improvement, the Commissioner determines, at step four, whether that improvement is related to claimant's ability to do work. *Id.* §§ 404.1594(f)(4). The improvement will be determined to be related to claimant's ability to do work "if there has been a decrease in the severity ... of **the impairment(s) present at the time of the most recent favorable medical decision** and an increase in [claimant's] functional capacity to do basic work activities." *Id.* §§ 404.1594(b)(3) (emphasis in bold added).

The Commissioner considers at step five whether any statutory exception justifies termination of benefits without medical improvement. *Id.* § 404.1594(f)(5). Where certain statutory exceptions are found to apply or where the Commissioner determines that medical improvement related to claimant's ability to work has occurred, the Commissioner performs step six of the process in which she determines whether all of claimant's current impairments in combination are severe. *Id.* § 404.1594(f)(6). If so, the Commissioner assesses at step seven claimant's RFC based upon claimant's current impairments and determines whether claimant can perform work she has performed in the past. *Id.* § 404.1594(f)(7). Step eight involves a determination whether, considering claimant's current RFC, age, education, and past work experience, claimant can do other work. *Id.* § 404.1594(f)(8).

## III.  Burden of Proof

■ As the parties agree, in the Tenth Circuit the medical improvement standard applies in a "closed period" case in which the Commissioner determines the claimant has been disabled for a finite period of time. *Shepherd v. Apfel*, 184 F.3d 1196, 1198, 1200 (10th Cir.1999). "Typically, both the disability decision and the cessation decision [in a closed period case] are rendered in the same document." *Id.* at 1199, n. 2 (quoting *Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir.1987)). However, the parties disagree as to the burden of proof applicable here.

The Act provides:

A recipient of benefits ... may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment ... has ceased, does not exist, or is not disabling only if such finding is supported by—
(1) substantial evidence which demonstrates that—
(A) there has been any medical improvement ... related to the individual's ability to work[ ] and
(B) the individual is now able to engage in substantial gainful activity ...

.     .     .     .     .

Any determination under this section shall be made on the basis of all the evidence available in the individual's case file, including new evidence concerning the individual's prior or current condition which is presented by the individual or secured by the Commissioner of Social Security. Any determination made under this section shall be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of a disability being drawn from the fact that the individual has previously been determined to be disabled.

42  U.S.C. § 423(f) (emphasis added).

## A.  The Parties' Positions

Plaintiff claims that since the ALJ determined plaintiff's disability continued af-

ter December 1982 the burden is on the Commissioner to prove both (1) medical improvement related to plaintiff's ability to work, and (2) that plaintiff is able to engage in substantial gainful activity. Therefore, according to plaintiff, the Commissioner may not rely on the lack of evidence to infer any part of the necessary showing. In plaintiff's view, the statutory requirement of neutrality regarding plaintiff's prior condition and the preclusion of an inference therefrom does not negate the requirement for the Commissioner to show medical improvement nor place the burden on plaintiff to show no medical improvement or an inability to engage in substantial gainful activity.

The Commissioner argues that the Social Security Disability Benefits Reform Act, 42 U.S.C. § 423(f) (1984), requires a determination on a neutral basis and eliminates any presumption that a recipient's disability continues. According to the Commissioner, the regulations, 20 C.F.R. § 404.1594(b)(6), use identical language to that in the statute and place the burden of proof on the claimant. The Commissioner argues that the legislative history of the statute shows that the obligation of a claimant to establish disability is the same in a termination case as in an initial determination. Because the burden in an initial determination is on the claimant until she proves she is unable to engage in her prior work, in the Commissioner's view the burden in a termination case is, likewise, on the claimant until she proves she remains unable to engage in her prior work. The Commissioner argues that only after a claimant meets her burden does it become the agency's burden to prove that a claimant is able to engage in other substantial gainful activity.

**B. Discussion**

The statutory language of the Disability Benefits Reform Act is ambiguous as to who has the burden of proof in a medical improvement case. The statute requires that benefits may be terminated only if the findings are supported by substantial evidence. 42 U.S.C. § 423(f). The determination is to be based upon the weight of all the evidence, both old and new, both that provided by the claimant and that procured by the Commissioner, and is to be made on a neutral basis without inference from any previous determination of disability. *Id.* Despite both parties' assertion that the plain language of the statute is clear, that language does not indicate a preference for or place the burden on either party.

The legislative history is likewise ambiguous. As the Commissioner argues, the House Conference Report indicates that "the claimant's obligations to establish the existence of his disability with regard to the CDI [continuing disability investigation] proceeding are the same as his obligations with regard to an initial determination." H.R. Conf. Rep. No. 98–1039 at 26 (1984), reprinted in 1984 U.S.C.C.A.N. 3080, 3084. However, in context, the quoted portion is not as clear as the Commissioner implies. Before making the statement quoted above, the committee notes that the bill "eliminates language in the Senate bill referring to the burden of proof being on the claimant in the case of medical improvement determinations. It also eliminates Senate language with respect to the burden of proof on the [Commissioner] in making other determinations under this provision. This agreement eliminates any confusion that might result from shifting burdens of proof." *Id.* The committee then states in the language quoted by the Commissioner that the intent is to require the same obligations as those established for initial determinations and elimination of burden of proof language should not be interpreted as placing a burden of proof on the [Commissioner]. "Rather, the language in question was dropped solely to

clarify the intent that decisions are to be made on the basis of the weight of the evidence and to avoid any misinterpretations with respect to the role of the claimant and the [Commissioner] in pursuing evidence or with respect to the non-adversarial nature of the proceedings." *Id.*

The committee indicated that the medical improvement standard should not be interpreted as granting a presumption of eligibility or allowing a presumption of ineligibility or arbitrary removal but that a termination decision must be made upon a neutral basis and upon the weight of all the evidence. *Id.* at 26, reprinted in 1984 U.S.C.C.A.N. at 3083–84. The committee used language relying on the obligations established in an initial determination case, but also included language indicating a desire to preclude shifting burdens-precisely what happens in an initial determination case. The committee concluded its discussion by referring to the non-adversarial nature of the disability proceedings and the fact that both the claimant and the Commissioner have roles in pursuing evidence upon which to make the decision. The court is left to determine whether in a case such as this (based upon the roles of the parties, the non-adversarial nature of the proceedings, and the nature of the medical improvement standard) it is more appropriate to have shifting burdens or to assign the burden to one party.

The House Ways and Means Committee Report indicates that one purpose of the bill is to address problems in the process which "resulted in termination of benefits for many beneficiaries whose medical condition has not changed substantially since they were allowed benefits." H.R.Rep. No. 98–618, at 11 (1984), reprinted in 1984 U.S.C.C.A.N. 3038, 3048. In its discussion of the medical improvement standard, the committee concluded:

> The committee is aware that in some cases adjudicated in prior years all the medical information relevant to the initial decision may not still be in the beneficiary's file and that such a situation would preclude the possibility of making an objective finding with respect to a change in the severity of the beneficiary's impairment. In such cases, SSA would be authorized to secure such medical information as may be necessary to fully reconstruct the medical records and data that were utilized in making the initial decision. The committee emphasizes, however, that the inability to reconstruct such records and data cannot serve, in and of itself, as a basis for determination that there has been medical improvement. Such a conclusion may be reached **only if** the records applicable to the initial decision have been fully reconstructed and the prior and current medical evidence discloses that there has **in fact** been medical improvement.

*Id.* at 13 (reprinted in 1984 U.S.C.C.A.N. at 3050)(emphasis added). The quoted language, although it does not indicate an intent as to the burden of proof, provides that a decision may not be based upon missing records and thereby implies that a decision should not be based upon a lack of evidence. The court concludes that, regardless of the party upon whom the burden is ultimately placed, the statutory language and legislative history reveal an intent that any decision may not be based upon a lack of evidence.

The Tenth Circuit has never fully addressed the burden of proof of medical improvement, but has provided some guidance. In 1994, the court decided that the Commissioner has the burden to show that a claimant has the ability to engage in substantial gainful activity. *Glenn v. Shalala*, 21 F.3d 983, 987 (10th Cir.1994). In reaching that conclusion, the court relied upon the Commissioner's statement of the burden in 20 C.F.R. § 404.1594 and rejected the argument that the claimant has the

burden of proving she cannot perform her prior work. *Id.* at 987 n. 1. The court also noted the opinion of the Fifth Circuit that "the ultimate burden of proof lies with the [Commissioner] in termination proceedings." *Id.* at 987 n. 2 (quoting *Griego v. Sullivan,* 940 F.2d 942, 944 n. 1 (5th Cir. 1991) (it remains to be seen whether courts will apply a shifting burden to termination cases because a shifting burden "could run contrary to § 423(f), as the statute clearly places the ultimate burden of proof on the [Commissioner]")). The court in Glenn concluded that the Commissioner's finding that the claimant was able to perform her prior work was supported by substantial evidence, and affirmed the decision. *Id.* 21 F.3d at 987.

This year the Fifth Circuit, citing Griego and with no consideration of whether a shifting burden should be used, assigned the burden of proof in a "closed period" case to the Commissioner. *Waters v. Barnhart,* 276 F.3d 716, 718 (5th Cir.2002). In similar fashion, two different panels of the Tenth Circuit, citing Glenn, have recently stated that the burden in a termination case is on the Commissioner to show both (1) medical improvement related to claimant's ability to work, and (2) that the claimant is currently able to engage in substantial gainful activity. *Patton v. Massanari,* No. 01–7023, 2001 WL 1173271 at *1 (10th Cir.2001); *Jaramillo v. Massanari,* 2001 WL 1117292 at *1, 21 Fed.Appx. 792 (10th Cir.2001). Glenn clearly placed the burden on the Commissioner to prove a claimant is able to engage in substantial gainful activity. Glenn also establishes that a claimant does **not** have the burden to prove she can no longer do her prior work because the court rejected that argument. However, Glenn does not specifically address the burden with regard to medical improvement. Although Patton and Jaramillo assign this burden to the Commissioner, those decisions were made without any discussion of the issues involved. Neither Patton nor Jaramillo are binding precedent because they are unpublished Order and Judgments. 10th Cir. R. 36.3. Moreover, Glenn, Patton, and Jaramillo are termination cases, not "closed period" cases. Therefore, the court is left to decide, based upon the factors discussed herein, who in a "closed period" case has the burden of proving medical improvement related to an ability to work.

The Social Security Act places a duty on the ALJ to fully and fairly develop the record, *Baca v. Dep't of Health & Human Serv.,* 5 F.3d 476, 479–80 (10th Cir.1993); 42 U.S.C. § 423(d), and a duty on the claimant to present evidence of the existence of her impairments, to submit to evaluation, and to cooperate in the process. 42 U.S.C. §§ 423(d), 423(f). If the claimant refuses to cooperate or to present evidence of which she is aware and has access, she may be required to forfeit benefits. *Id.* The statute requires that the medical improvement decision be based upon **all** of the evidence, and the legislative history reveals an intent that a finding of medical improvement may not be based upon an inability to secure or reconstruct records relating to the initial decision. The court concludes that a decision based upon a failure to produce evidence, at least where the evidence is reasonably believed to exist, is contrary to the intent of the statute. Because the Commissioner has the power to subpoena evidence and compel action by the claimant, this factor weighs in favor of placing the burden on the Commissioner.

As stated earlier, the statute is inconclusive as to burden of proof. The legislative history somewhat favors a burden of proof on the claimant as to medical improvement and on the Commissioner as to ability to engage in substantial gainful activity. However, there is evidence from the legis-

lative history supporting either interpretation regarding the burden of medical improvement. Tenth Circuit precedent in termination cases clearly places the burden of proving ability to engage in substantial gainful activity on the Commissioner and has been interpreted by that court to place the entire burden in termination cases on the Commissioner.

■ Placing the burden on the claimant involves forcing the claimant to attempt to prove a negative-that there has been no medical improvement or that any medical improvement shown does not related to claimant's ability to work. Such an attempt, though not impossible, is fraught with logical, practical, and evidentiary problems. This factor weighs in favor of placing the burden on the Commissioner. Considering all of the factors above, the court concludes that the Commissioner has the burden on medical improvement.

The next issue is whether the burden in a termination case should be applied to a "closed period" case. The court finds no reason the same burden should not be applied in a "closed period" case. Although a "closed period" case does not strictly involve a "disability review" as envisioned in 20 C.F.R. § 404.1594(a) and 42 U.S.C. § 421(i), it does involve a termination of disability benefits pursuant to the medical improvement standard of review provided in 42 U.S.C. § 423(f). The only difference is that in a "closed period" case, the eligibility decision and the termination decision are made in the same document. Shepherd, 184 F.3d at 1199, n. 2 (citing Pickett, 833 F.2d at 289, n. 1). Moreover, a "closed period" case is an "action relating to medical improvement" to which § 423(f) termination standards apply. Pickett, 833 F.2d at 291–92; see also Chrupcala v. Heckler, 829 F.2d 1269, 1274–77 (3d Cir.1987) (Commissioner "has not met the burden imposed upon him [in a "closed period" case] to present evidence of sufficient improvement in the appellant's condition."); Waters, 276 F.3d at 718 (placing burden on Commissioner in "closed period" case). Therefore, the court finds that in a "closed period" case the Commissioner has the burden to prove both (1) medical improvement relating to claimant's ability to work, and (2) ability to engage in substantial gainful activity.

## IV. Consideration of Evidence Made a Part of the Record by the Appeals Council

The Commissioner argues (in opposition to plaintiff's claim that she meets or equals listing 5.07) that evidence submitted to the Appeals Council does not constitute evidence which would trigger the duty of the ALJ to consider and discuss listing 5.07 in his decision, because the evidence was not before the ALJ. (Comm'r Br. at 15). Therefore, the Commissioner may be seen to argue that evidence received and made a part of the record by the Appeals Council but not remanded for consideration by the ALJ is not a part of the record to be reviewed by the district court. If so, the Commissioner misapprehends the law in the Tenth Circuit.

■ The regulations allow a claimant, without a showing of "good cause," to submit new and material evidence for the Appeals Council review of the case. 20 C.F.R. § 404.970(b). Where that evidence relates to the period on or before the date of the ALJ hearing, the Appeals Council shall consider the evidence and "shall evaluate the entire record including the new and material evidence submitted." Id. The Tenth Circuit has considered that regulation and determined that such evidence is a part of the whole record and will be considered by a reviewing court in its determination whether the Commissioner applied the correct legal standard and whether there is substantial evidence to support

the Commissioner's decision. *O'Dell v. Shalala,* 44 F.3d 855, 859 (10th Cir.1994); see also *Jones v. Sullivan,* 804 F.Supp. 1398, 1404 (D.Kan.1992). Where the Appeals Council has considered the evidence and denied review, the court will determine whether substantial evidence supports the ALJ decision based upon all the evidence including the evidence made a part of the record by the Appeals Council. *Jones,* 804 F.Supp. at 1404.

## V. Medical Improvement

Medical improvement must be determined based upon medical evidence showing changes in signs, symptoms, or laboratory findings. *Shepherd,* 184 F.3d at 1199 (citing 20 C.F.R. § 404.1594(b)(1)); see also *Rice v. Chater,* 86 F.3d 1, 2 & n. 2 (1st Cir.1996). In applying the medical improvement test the ALJ must first compare the severity, at that time, of **the impairment or impairments for which the claimant was previously determined to be disabled** with the severity of **those impairments now.** *Id.* at 1201 (citing 20 C.F.R. § 404.1594(b)(7)). "Then in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of [those] impairment(s)." *Id.* (citing 20 C.F.R. § 404.1594(c)(2)). The ALJ must compare this RFC with claimant's RFC at the time she was determined to be disabled and may find medical improvement related to an ability to work only if there is an increase in RFC based upon changes in objective medical evidence-signs, symptoms, or laboratory findings. *Id.*; see also *Rice,* 86 F.3d at 2, n. 2. Even if the ALJ finds medical improvement related to claimant's ability to work, he may not terminate benefits unless the evidence supports a finding that the claimant is able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1)(B); 20 C.F.R. § 404.1594(a). This finding requires an-

other RFC determination based upon **all** of claimant's **current** impairments. 20 C.F.R. § 404.1594(f)(7).

■ Although the ALJ here made each of the findings required by the medical improvement test, his finding that plaintiff experienced "medical improvement allowing for full time sedentary work" (R. 24) is not supported by substantial evidence in the record as a whole. In fact, the record establishes that, at least through April 25, 1998, plaintiff's condition has undergone only periods of temporary remission which "will not warrant a finding of medical improvement." 20 C.F.R. § 404.1594(c)(3)(iv). Moreover, the evidence shows that plaintiff's condition precludes any substantial gainful activity due to absences from work necessitated by her Crohn's disease.

The ALJ's finding of medical improvement rests on three factual conclusions: (1) the plaintiff had a reduced number of hospital visits and a limited degree of ongoing medical treatment after January 1991 (R. 22), (2) plaintiff's reported symptoms after January 1991 are not credible (R. 21), and (3) plaintiff "went into several years of fairly good remission" by January 24, 1991. (R. 22). Conclusions number two and three are not supported by substantial evidence in the record as a whole and conclusion number one does not support the ALJ's determination of medical improvement in plaintiff's signs, symptoms, or laboratory findings. The court discusses each finding in turn.

### A. Reduced Hospital Visits and Limited Ongoing Treatment after January 1991

The ALJ concluded that plaintiff had reduced hospital visits and a limited degree of ongoing treatment after January 1991 based upon his determinations that: the record does not include any recent

medical records, plaintiff did not testify to any recent or significant medical problems, and plaintiff was briefly hospitalized in May 1993, May 1994, and January 1995 with no remaining significant abnormalities, no stenosis, and an unremarkable physical exam. (R. 19–20). The burden is on the Commissioner to establish medical improvement, furthermore it is error to base a finding of medical improvement upon the lack of medical records or testimony in the record, especially when the ALJ is aware medical contact occurred. (R. 20)(medical treatment statement indicated recent contact, but no records were submitted). Moreover, if the record is incomplete and insufficient to make a decision, the Commissioner must complete the record. The court will address the substance and credibility of plaintiff's testimony later in this opinion.

The ALJ did not discuss, and presumably did not consider, the following evidence in the record at the hearing: plaintiff's self-treatment of bowel obstructions in 1993 and 1994 (R. 253, 332) or hospitalization over the weekend for a bowel obstruction in January 1994. (R. 251; c.f. R. 332). The ALJ may not impermissibly ignore the evidence as a whole while choosing to abstract pieces of evidence favorable to his position. *O'Connor v. Shalala*, 873 F.Supp. 1482, 1491 (D.Kan.1995); *Jones*, 804 F.Supp. at 1406; *Claassen v. Heckler*, 600 F.Supp. 1507, 1511 (D.Kan. 1985).

Furthermore, the ALJ's conclusion equates lack of hospitalization or ongoing attention from medical personnel with non-disability. The Appeals Council received new evidence (a statement by plaintiff's treating physician) which precludes such a conclusion. (R. 466–69). The physician, who has treated plaintiff since 1975 (R. 132; c.f. R. 466), opined that he had taught plaintiff how to treat her partial temporary obstructions by putting herself on clear liquids and rest. Therefore, she did not need to seek medical attention each time she had a temporary bowel obstruction, and long periods of time without hospitalization or other specific medical attention does not imply her condition is not disabling. (R. 467).

The ALJ was unable to consider the treating physician's opinion and the Appeals Council determined that opinion does not provide a basis for changing the ALJ's decision. Yet, a treating physician's opinion as to the nature and severity of a claimant's impairments is to be given controlling weight when that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). The treating physician's opinion is entitled to substantial weight unless good cause is shown to disregard it. *Goatcher v. Dep't of Health & Human Serv.*, 52 F.3d 288, 289–90 (10th Cir.1995).

"When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports 'to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around.' " *Id.* at 290 (quoting *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir.1988)). The Commissioner must give specific, legitimate reasons for rejecting the treating physician's opinion and, in doing so, must consider certain factors regarding the physician, the record, the treatment, and the treatment relationship. *Id.* (citing 20 C.F.R. § 404.1527(d)(2)-(6)). There is no discussion in the record of the required factors, of why the treating physician's opinions were disregarded, or of why the testimony of the medical expert should be accepted over that of the treating physician. Furthermore, the treating physician's opinion is uncontroverted. There are no consultative examinations or medi-

cal reports containing contrary conclusions. Even the testimony of the medical expert (discussed later in this opinion) is not inconsistent with that of the treating physician. Therefore, the treating physician's opinion must be given controlling weight at least through the date of the last evaluation for plaintiff's Crohn's disease—April 25, 1998.

## B. Credibility of Plaintiff's Allegations of Symptoms after January 1991 [2]

"Credibility determinations are peculiarly the province of the finder of fact." *Diaz v. Sec'y of Health & Human Serv.*, 898 F.2d 774, 777 (10th Cir.1990). Therefore, in reviewing the ALJ's credibility determinations, the court will usually "defer to the ALJ as the trier of fact, the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir.1991). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988). Here the ALJ has not linked his findings to substantial evidence.

The ALJ stated plaintiff experiences fatigue and fairly constant pain of level five on a ten point scale. (R. 21). He noted that plaintiff takes nonprescription strength Advil for pain. (*Id.*). The ALJ stated the factors to be considered in assessing the credibility of plaintiff's allegations of symptoms. (*Id.*) (citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987); 20 C.F.R. § 404.1529; Soc. Sec. Rul. 96–7p). The ALJ concluded:

Considering these factors, the undersigned finds that the claimant has functional limitations, but that the claimant's statements concerning her impairments and their impact on the ability to work are credible only to the extent they indicate an inability to engage in activity exceeding the residual functional capacity set forth below.

For periods prior to January 1991, the evidence indicates pain and fatigue requiring frequent periods of rest which would preclude work on day-in, day-out basis. The evidence after that date indicates a fairly good remission. The claimant reported that she was able to do her household chores, resting when necessary. Overall, the evidence did not indicate significant limitations. She was able to drive short distances and visit with friends and relatives (exhibit 16). Since January 1991, the claimant has had a reduced number of hospital visits and a limited degree of ongoing medical treatment.

(R. 21–22). Plaintiff testified, in response to questioning by her attorney, regarding her fatigue:

Q Describe the fatigue.

A You're just tired. I just—

Q Would you have to rest? Was it that bad?

A Yes, I have to rest several times a day even at home. I can't even do my housework. I can't even get through washing my dishes without sitting down sometimes two times.

Q How long would you need to rest back during that time period?

A At the VA?

Q Yeah, well earlier on even up to 1986 is what we're focusing on.

A Well, when I wasn't working I was—I don't know, I was just tired all the time.

**2.** This credibility analysis relates not only to plaintiff's allegations of pain, but fatigue, and the need to rest frequently. Plaintiff alleges these symptoms taken together are of disabling severity, and the ALJ concluded that the symptoms were of disabling severity before January 1991, but not thereafter. (R. 22, 24, 25).

I couldn't do much without having to sit down and rest several times a day.

Q  How long would you do it?

A Sometimes I'd lay down for an hour, two at a time.  And in between that sometimes I'd get through and I'd sit down for a while, just up and down all day long.  I'd do a little bit and then I'd have to rest.

(R. 60).

In response to questioning by the ALJ, plaintiff testified that, on a scale of one to ten, her continual pain was:

A Somewhere in the middle because I had pain there all the time.  And when it would get worse it would be really severe, you know severe pain.

Q  Did that happen any time other than when you were about to go in or actually in the hospital?

A Well, it was always when I went into the hospital.

Q  I know that, we already assume that to be true just given the nature of your condition.  I'm trying to understand the other times.  Did it get as high as that ten level, nine to ten level?

A Yes, it would get that high.

Q  How many days to the best you can recall, week or month, might equal to that point?

. . .

Q  Okay, would it help you if we could focus you on just the time that you were working at the VA? Can you give me a general sense during that time?

A Yes, I would—I had pain all he time I was working.  And the longer I worked the worse the pain got.

Q  . . . When you last worked, . . . was it at that time at about a ten?

A Yes.

Q  Okay, how long had it been at that point to where it finally caused you to feel like you couldn't go on?

A Well, I'd say the last week I worked before I just couldn't go on.  I had to go to the hospital.

(R. 62–64).  On re-examination by her attorney, plaintiff testified that her pain was at a constant level of five, and on the days she had to stay home the pain was at a level higher than five.  (R. 67).

From plaintiff's testimony, it is unclear whether plaintiff was speaking of her pain and fatigue only prior to 1991 or also after that time.  The questioning focused on the time before 1988, but plaintiff often answered in the present tense.  The medical examiner testified regarding plaintiff's ongoing symptoms after 1991 that, "There were periods. of times where she was asymptomatic except for the flare ups.  There were periods of time when she had symptoms even when she didn't have significant flare ups."  (R. 51).  Moreover, plaintiff's treating physician stated:

Ms. Robbins did not regain the ability to reliably function for eight hour work days in January of 1991 or at any time later.  She would periodically need frequent and unpredictable rest breaks for pain and fatigue and bathroom breaks, and she would frequently have unpredictable days of increased pain and fatigue that would necessitate absences from work even in the easiest work setting.  Her allegation of pain that would keep her in bed several days per month is quite consistent with her condition.  Her pain and fatigue would also have affected the pace of her work.  She could not have worked for a full eight hour work day even on her fairly good days.

(R. 468).  The treating physician also stated that plaintiff's complaints are consistent with her medical condition and that it is his opinion that she suffers the symptoms alleged.  (R. 469).

The ALJ did not discuss how plaintiff's symptoms changed after January 1991 or

why he credited her testimony regarding symptoms before that date but determined she did not have the same symptoms after that date. The only evidence directly addressing plaintiff's symptoms after January 1991 was the plaintiff's statements in the present tense expressing the same symptoms as those occurring before 1991, the medical expert's testimony that there were periods plaintiff had symptoms when she didn't have flare ups, and the treating physician's statement that plaintiff would frequently experience disabling symptoms which would prevent her from going to work. The ALJ based his decision that the severity of plaintiff's symptoms decreased after January 1991, upon the facts that there were fewer hospitalizations and medical records after that time; that after a endoscopy in January 1991 plaintiff was told, "Your colon looks good" (R. 283); and that hospital records showed no significant abnormalities in January 1995. (R. 19–20). The frequency of hospitalizations and medical contacts have been discussed above. With regard to the endoscopy in January 1995, the ALJ quoted from an instructional sheet given plaintiff after the endoscopy and added the superlative "really good," which was not included in the record cited. (R. 283). In discussing that procedure, the physician's records indicate, "Colon appears normal, but ... there is stenosis, erythema, edema and most probably involvement of Crohn's. Biopsies obtained. Unable to pass into the terminal ileum or jejunum." (R. 279). The 1995 discharge record relied upon by the ALJ states that the "workup" and a physical examination revealed no significant abnormalities. (R. 339). Despite finding no significant abnormalities in the "workup," the doctor accepted the credibility of plaintiff's complaints and did an exploratory laparotomy "finding numerous and significant adhesions in the lower abdomen." (R. 340). In the operation report, the doctor reported, "The patient had approximately 18 inches

of small bowel and 12 inches of proximal colon that were all very inflamed, edematous, dilated and probably involved in active ileitis and colitis secondary to her Crohn's. ... The patient did have several adhesions to the abdominal wall and several band adhesions, none were frankly pinching off the small bowel, these adhesions were all taken down." (R. 342). Other than the implication that "no significant abnormalities" means the plaintiff was incredible and that the "workup" and physical exam showed no medical evidence of problems-both of which are contrary to the clear findings of the exploratory surgery, the ALJ did not discuss how these medical findings affected plaintiff's symptoms, or why they would justify a conclusion that plaintiff's symptoms became less severe after 1991. The ALJ admits that the plaintiff's impairments could reasonably be expected to produce the symptoms alleged (R. 21), but then concludes plaintiff's testimony is credible for periods before 1991 but not after January 1991. The ALJ does not point to inconsistencies in plaintiff's testimony or between plaintiff's testimony and the record and there is nothing in the record to indicate such inconsistencies. The court concludes that there is not substantial evidence in the record to support the ALJ's credibility decision.

The ALJ concluded that plaintiff's allegations of symptoms before January 1991 were credible, and the court finds substantial evidence in the record to support that conclusion. Moreover, the court finds that no different conclusion can be supported by the record for the time period from January 1991 until at least plaintiff's last small bowel study on April 25, 1998.

### C. Remission after January 1991

The conclusion that plaintiff "went into several years of fairly good remission" by

January 24, 1991 (R. 22), is based upon testimony of the medical expert. (R. 20, 46). However, the medical expert's opinion was based only upon medical evidence provided to the expert before the hearing or during the hearing. (R. 36, 41–46). Therefore, the expert's opinion was not informed by the opinion of plaintiff's treating physician.

The medical expert testified that symptomatology from Crohn's disease would vary from person to person and did vary from time to time in plaintiff's case. (R. 42). Having reviewed the medical evidence provided before the hearing, the expert concluded that plaintiff's condition was in remission from November 1988 through June 1993. (R. 44). This opinion was based upon the facts that the medical evidence reflected no hospitalizations and no obvious problems with plaintiff's Crohn's disease. (*Id.*). At the hearing, however, the medical expert was directed to information regarding hospitalizations in December 1989 and November 1990 and the endoscopy performed in January 1991.(*Id.*). With that information, the medical expert changed her opinion and testified that "it would probably be from that period of time, January '91 to May of '93, where there would be at least partial remission of the disease." (R. 46 (emphasis added)).

The medical expert also testified as to limitations required by plaintiff's condition as reflected in the medical evidence before her. The ALJ began his questioning regarding limitations:

Q ... Okay, would there be in general, and I'll take testimony later as to whether there was any recurrence of chronic problems such as diarrhea, the pain and the degree as to which it may have bene [sic] present; but just as a general proposition with this diagnosis, would there be limitations that would apply on more or less an ongoing basis?

A The major limitation would be related to being able to get up and use bathroom facilities at will.

(R. 46). For his final area of questioning the ALJ asked if there would be any limitations in regards to activity levels such as lifting, carrying, or ambulation. The expert responded that in general fatigue is present with Crohn's disease and the level of fatigue varies with how active the disease is. In general someone with Crohn's would do better with light exertion work. (R. 47–48). Plaintiff's attorney examined the medical expert with regard to the specific symptoms alleged by plaintiff:

Q Remission that you referred to was one of there not being flares wasn't that right?

A Yes, sir.

Q That doesn't mean that in between time even during that time she didn't have—necessarily have pain and fatigue or frequent diarrhea as you've indicated could be possible?

A I don't have many clinic notes during that period of time so it's hard for me to state. I can tell you that at periods of time from the clinic notes I do have, which were mostly a little bit later in '94, '95, '96 there were periods of time where she appeared relatively asymptomatic and there were periods of time where she was not—she definitely had symptoms.

Q Even aside from the flare ups?

A There were periods of times where she was asymptomatic except for the flare ups. There were periods of time when she had symptoms even when she didn't have significant flare ups.

(R. 50–51).

It is clear that the expert's opinion was based upon the medical evidence available to her, that her opinion as to partial remission from 1991 to 1993 was based upon a

lack of hospitalizations during that period, and that the expert was concerned that there were fewer clinic notes after 1991. Despite the qualified nature of this testimony, the ALJ concluded: that plaintiff had a "fairly good remission" after January 1991 (R. 20, 22), that prior to January 1991 plaintiff's pain and fatigue reduced her RFC below that of full-time work, but she was medically improved as of January 24, 1991 (R. 24), and that she was not disabled at any time after January 24, 1991. (R. 25). This conclusion is not supported by the record as a whole.

The ALJ's conclusion is further brought into question by the statement of plaintiff's treating physician and the testimony of the vocational expert. The treating physician opined: that plaintiff never had more than short periods of improvement in her condition, that he had taught plaintiff to treat herself for her temporary partial bowel obstructions by taking clear liquids and rest obviating the necessity for frequent clinic visits, that plaintiff experienced pain and fatigue at all times and would have times of increased pain and fatigue due to intermittent bowel obstructions, and that plaintiff's frequent unpredictable days of increased pain and fatigue would necessitate absence from any work setting and would keep her in bed several days a month. (R. 467–68). The vocational expert testified that "employers might tolerate one to two days a month [absence] on a regular basis from an otherwise satisfactory employee." (R. 74). Therefore, the evidence shows that plaintiff was unable to engage in significant gainful activity because of excessive absences caused by her impairments. On the basis of the uncontroverted evidence, the court finds plaintiff had no medical improvement related to her ability to work even during the time of the "partial" remission from 1991 to 1993.

The ALJ also failed to consider whether plaintiff's 1991—1993 remission was a "temporary remission" within the meaning of the regulations. The regulations provide:

In some cases the evidence shows that an individual's impairments are subject to temporary remission. In assessing whether medical improvement has occurred in persons with this type of impairment, we will be careful to consider the longitudinal history of the impairments, including the occurrence of prior remissions, and prospects for future worsenings. Improvement in such impairments that is only temporary will not warrant a finding of medical improvement.

20 C.F.R. § 404.1594(c)(3)(iv); see also *Borgens v. Halter,* 164 F.Supp.2d 1309, 1321 (M.D.Fla.2001); *Carlson v. Shalala,* 841 F.Supp. 1031, 1037 (D.Nev.1993). The ALJ failed to consider the longitudinal history of plaintiff's impairments in accordance with the regulations.

The regulations seem to contemplate a situation such as this where the plaintiff's impairments are subject to periods of increased and decreased activity of the disease and the symptoms associated with it. Although the regulations do not define the term "temporary remission" or provide guidance as to what period of time may be considered temporary, there is precedent that a temporary remission may last for several years. *Carlson,* 841 F.Supp. at 1037. In Carlson, the plaintiff's condition was found in partial remission between 1983 and 1990. *Id.* However, the court noted that the plaintiff had documented five episodes related to his condition before 1988. *Id.* The court concluded, therefore, that the remission was temporary within the meaning of the regulations, *id.* at 1038, reversed the Commissioner's decision, and remanded for an award of benefits. *Id.* at 1039.

The uncontroverted evidence tends to support a conclusion that any partial re-

mission in plaintiff's condition between 1991 and 1993 was a temporary remission within the meaning of the regulations and, therefore, would not support a finding of medical improvement. The ability to work from time to time due to remissions of a disabling impairment does not constitute significant gainful activity. *Wilcox v. Sullivan*, 917 F.2d 272 (6th Cir.1990).

The medical expert testified to "at least partial remission" between January 1991 and May 1993, but the ALJ found a "fairly good remission" after January 1991. (R. 22). The medical expert testified that the plaintiff was hospitalized in May or June of 1993 due to Crohn's disease. (R. 44, 46). The medical evidence indicates that a portion of plaintiff's small bowel was surgically removed in May 1994 (R. 329), and that plaintiff was admitted to the hospital in January 1995 because of persistent abdominal pain and weight loss. (R. 339). At that time, plaintiff had an exploratory laparotomy in which several adhesions were removed and it was noted that eighteen inches of small bowel and twelve inches of proximal colon were inflamed as a result of her Crohn's disease. (R. 342–43). On April 25, 1998 a small bowel study was done because of plaintiff's abdominal pain. (R. 463). In that study it was noted that plaintiff's small bowel transit time was "markedly short," and that there were inflammatory changes in four to five centimeters of plaintiff's ileum. (*Id.*).

Despite this evidence and the expert's testimony that the remission lasted only till May 1993, the ALJ did not address whether the remission was temporary within the meaning of the regulations. The ALJ found, moreover, that plaintiff's insured status extended through March 1994. (R. 18). Nowhere did the ALJ discuss whether plaintiff was disabled within the meaning of the Act at any time between May 1993 and the end of her insured status in March 1994. Plaintiff

was admitted to the hospital shortly before her surgery in 1994. (R. 332). In the record of that visit it was noted that plaintiff had three hospitalizations within the last year and "had multiple episodes of partial obstructions at home which she has taken care of by placing herself on clear liquid diet for several days." (*Id.*). In light of the treating physician's opinion and the other evidence in the record, the ALJ's failure to consider whether the 1991—1993 remission was temporary within the meaning of the regulations is error which would require remand even if the court had found medical improvement between 1991 and 1993.

**D. No Medical Improvement**

The uncontroverted evidence indicates that after January 1991 plaintiff had continuous pain and fatigue, and temporary partial obstructions of the small bowel causing increased pain, fatigue, and the necessity for bed rest several times a month. Plaintiff's allegations of disabling pain, fatigue, and the frequent need for rest after January 1991 is supported by medical evidence. The medical expert's opinion of "at least a partial remission" between 1991 and 1993 (as indicated by decreased hospitalizations and fewer contacts with medical personnel) is not inconsistent with the treating physician's report and the other evidence. The ALJ's determination that plaintiff's testimony of disabling pain, fatigue, and the need for frequent periods of rest is credible for periods before January 1991 but not credible thereafter is not closely and affirmatively linked to substantial evidence, is contrary to the treating physician's opinion, and is not supported by substantial evidence of record. Therefore, the court finds that the Commissioner has failed to meet her burden to show medical improvement related to plaintiff's ability to

work at least for the period before April 25, 1998.

Moreover, the uncontroverted evidence of record is that plaintiff's condition necessitates that she miss work for several days a month. The vocational expert testified that employers would allow, at most, two days a month of absences for such impairments. The evidence shows that plaintiff is unable to perform substantial gainful activity and, therefore, the Commissioner cannot meet her burden to show that plaintiff is able to engage in substantial gainful activity. Therefore, the Commissioner's decision must be reversed.

Because of the way the court decides the issues herein, it need not reach plaintiff's arguments concerning the ALJ's analysis of whether plaintiff's impairments meet or equal a listed impairment or whether plaintiff's prior work produced transferable skills. On remand, in considering the issue of medical improvement after April 25, 1998, the ALJ must consider plaintiff's arguments with regard to those issues.

### VI. Immediate Award of Benefits or Further Proceedings?

█ Whether to remand the case for additional fact-finding or for an immediate award of benefits is within the discretion of the district court. *Taylor v. Callahan*, 969 F.Supp. 664, 673 (D.Kan.1997) (citing *Dixon v. Heckler*, 811 F.2d 506, 511 (10th Cir.1987)). Where remand for additional fact-finding would serve no useful purpose, the court may order an immediate award. *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir.1989).

As discussed above, the evidence of record supports but one conclusion for the period through April 25, 1998. The court finds that plaintiff was disabled within the meaning of the Act, and the Commissioner has failed in her burden to show medical improvement related to plaintiff's ability to work, or to show that plaintiff was able to

engage in any substantial gainful activity at any time between January 1991 and April 25, 1998. Therefore, the court finds that further fact-finding with regard to that period would be a waste of time—plaintiff's disability continued from January 1977 through April 25, 1998.

The record after April 25, 1998 is not so clear. Plaintiff's treating physician's opinion was reported on January 11, 2000, but the record contains no treatment or hospital records after April 25, 1998. The Act requires that a termination decision be based on the weight of all the evidence, not on a lack of evidence. Although the court is aware that the history of plaintiff's condition supports the likelihood that there has been no medical improvement and that any remission after April 25, 1998 is merely a temporary remission, based on the incomplete record, the court is unable to find no medical improvement after April 25, 1998. Further fact-finding is necessary to determine whether medical improvement has occurred during the period after that date and whether plaintiff is now able to engage in substantial gainful activity.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be reversed and that the case be remanded for immediate award of benefits based upon the court's finding of disability through April 25, 1998.

**IT IS FURTHER RECOMMENDED** that the case be remanded for further proceedings in accordance with this opinion (fourth sentence remand) to determine whether there has been medical improvement at any time after April 25, 1998 and whether plaintiff is now able to engage in substantial gainful activity.

Copies of this recommendation and report shall be mailed to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P.

72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy.

March 20, 2002.