Danny L. STAFFORD

v.

Jo Anne B. BARNHART, Commissioner of Social Security Administration

No. 1:04 CV 329.

United States District Court, E.D. Texas, Beaumont Division.

Nov. 16, 2005.

---

Donald E. Sample, Beaumont, TX, for Plaintiff.

Kendall Morrison Rees, Dallas, TX, for Defendant.

## *MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

HEARTFIELD, District Judge.

The Court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, for consideration pursuant to applicable law and orders of this Court. The Court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the United States Magistrate Judge are correct, and the Report of the United States Magistrate Judge is **ADOPTED**. A Final Judgment will be entered separately, affirming the decision of the Commissioner and dismissing this action.

## *REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

HINES, United States Magistrate Judge.

Plaintiff, Danny L. Stafford, seeks judicial review of the Commissioner of Social Security Administration's ("SSA") decision denying his application for a closed period of disability insurance benefits.[1]

## I. PROCEEDINGS

This proceeding is Mr. Stafford's second trip to federal court in connection with his attempt to prove disability arising from chronic lower back pain and other complications resulting from work-related injuries to his left wrist and left knee when he fell from a scaffold in August, 1996. Mr. Stafford first applied in August, 1999, alleging onset of disability on May 26, 1998. In the first action (No. 1:01cv249 (E.D.Tex. Feb. 11, 2003)), the court determined that important, post-hearing evidence from a treating physician was never considered. Consequently, the court ordered remand for consideration of that additional evidence, and directed that it be weighed in accordance with regulations and governing case law. *Id.* at Docket No. 16, 17.

Before the matter was reconsidered on remand, Mr. Stafford resumed employment. Engaging in substantial gainful employment necessarily extinguishes eligibility for present and future benefits indef-

---

1. This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R.1 (H) for the Assignment of Duties to United States Magistrate Judges. It was referred originally by Beaumont General Order 98–6, which was superseded by General Order 05–6 on February 22, 2005.

initely.[2] Thus, Mr. Stafford amended his application to seek benefits only for a "closed period." In other words, upon remand, Mr. Stafford applied for benefits covering a temporary period that stopped before the date of the reconvened administrative hearing.[3] Specifically, he sought benefits only for the period beginning May 26, 1998, and continuing through June 13, 2002.[4]

## II. DECISION ON REMAND

Administrative Law Judge (ALJ) Harry L. Williams, Jr.—who considered plaintiff's original application—reconsidered the matter on remand. ALJ Williams conducted a second evidentiary hearing on February 10, 2004, at which plaintiff, represented by counsel, appeared and testified. In addition, ALJ Williams received testimony of a vocational expert (VE) Maunsel Wilkinson.

On March 26, 2004, ALJ Williams issued a new decision and again denied plaintiff's application. Tr. 292–300. Using a five-step sequential analysis prescribed by reg-

ulation and approved by courts,[5] he concluded that although plaintiff has severe impairments that precluded him from performing past relevant work during the closed period, he retained residual functional capacity (RFC) to perform a limited range of light work.[6] Tr. 297. Further, relying on VE Maunsell's testimony, ALJ Williams found that plaintiff can perform available alternative work as a *console guard, table worker* and *cashier.* Tr. 298. ALJ Williams therefore concluded that plaintiff *"retains the capacity for work that exists in significant numbers in the national economy and is not under a 'disability' as defined in the Social Security Act, at any time through the date of this decision." Id.*

ALJ Williams rejected treating physician opinion from Dr. Carl Beaudry, M.D., who opined in October, 1999, that plaintiff was totally and permanently disabled from returning to his regular duties. Tr. 198. In the original proceeding, ALJ Williams reasoned that Dr. Beaudry did not employ a required residual functional

2. The Social Security Act defines disability as *"inability to engage in any substantial gainful activity."* 42 U.S.C. § 423(d)(1)(A) (2001).

3. In a closed period of disability, "The decision-maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Waters v. Barnhart,* 276 F.3d 716, 719 (5th Cir.2002), citing *Pickett v. Bowen,* 833 F.2d 288, 289 n. 1 (11th Cir.1987).

4. Mr. Stafford actually returned to work on September 13, 2001. Thus, his amended application seeking benefits through June 13, 2002, contemplates receiving benefits for nine months *while he was working and earning wages.* Closed-period benefit *recipients* are entitled to a nine-month trial work period without losing their benefits. 20 C.F.R. §§ 404.1592(d)(1); 404.1592(e) (2005). Stafford's counsel argues a novel theory that an *applicant* for closed benefits is entitled to the

same trial work period. It is not necessary for the court to address that argument in this proceeding.

5. *See* 20 C.F.R. § 404.1520 (2005); *Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell,* 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

6. ALJ Williams determined plaintiff's limitations to be standing/walking for not more than 3 hours in an 8–hour day if permitted to sit once every 30 minutes; lifting/carrying 20 pounds occasionally and 10 pounds frequently; lifting no more than 5 pounds with his left hand "and using it as a guide"; and occasionally climbing stairs and ramps, stooping, kneeling, and crouching. He determined that plaintiff must never be required to crawl or climb rope, ladder, or scaffolding. Tr. 297.

analysis of ability to lift, carry, stand, walk, sit and other factors. Tr. 16. Dr. Beaudry's subsequent November, 2000 "Medical Assessment of Ability to Do Work–Related Activities" (Assessment) addressed those deficiencies, and it was this very item of evidence—never considered in the original decision—which required remand in the *earlier* case.

In the *current* application, ALJ Williams considered the Assessment along with all other evidence. Tr. 296. However, ALJ Williams again declined to give Dr. Beaudry's opinion controlling weight. ALJ Williams explained his credibility choice by stating that Dr. Beaudry's *opinion* was inconsistent with his own medical *findings*, and was further inconsistent with the *remaining medical evidence as a whole*. *Id.*

### III.  POINTS OF ERROR

Plaintiff asserts four points of error that are stated verbatim in the note.[7] Analytically, these points raise three issues:

1.  Whether the Commissioner *failed to apply proper principles of law* by not giving controlling weight to treating physician opinion;

2.  Whether the Commissioner *failed to apply proper principles of law* by not weighing treating and other physician opinion against prescribed regulatory factors;

3.  Whether the Commissioner's decision is *unsupported by substantial evidence* because:

    a.  ALJ Williams failed to cite valid reasons for according limited weight to the opinion of plaintiff's treating physician; or

    b.  A hypothetical question posed to the vocational expert did not include all of plaintiff's limitations.

Plaintiff's arguments and the Commissioner's responses are summarized in the relevant sections which follow.

### IV.  DISCUSSION AND ANALYSIS

### A.  Alleged *Legal Error* In Evaluating Medical Opinions

### 1.  *Competing Arguments*

Plaintiff argues that ALJ Williams was obliged to evaluate Dr. Beaudry's assessment in light of regulatory factors specified in 20 C.F.R. § 404.1527(d) to determine whether to give Dr Beaudry's opinion controlling weight. Pl.'s Br. at p. 18. Plaintiff further argues that ALJ Williams also was required to weigh the opinions of other physicians in light of those six factors. Pl.'s Br. at p. 19. Plaintiff argues that ALJ Williams did not utilize that framework when determining what weight to give any of the physicians' opinions. Therefore, ALJ Williams erred.

---

7.  Plaintiff's points of error:
    "A.  The Commissioner did not apply proper legal principles because under the regulations:
    1.  The treating doctor's opinion should have been given controlling weight in determining plaintiff's claim. The Administrative Law Judge *did not apply the 6 regulatory factors* in determining whether to give Dr. Beaudry's opinion controlling weight, nor did the ALJ discuss the application of those factors.
    B.  Having refused controlling weight to the treating doctor's opinion, the Administrative Law Judge erred in applying legal principles because:
    1.  The treating doctor's opinions were entitled to great weight;
    2.  The ALJ did not apply the required regulatory analysis to other medical opinions relied upon.
    C.  The hypothetical question is insufficient because it does not describe the plaintiff's limitations, and therefore, the responses are not substantial evidence to support the Commissioner's decision."
    Pl.'s Br. at "Statement of the Issues."

The Commissioner's response does not address these arguments directly. This unfortunate omission replicates an all-too-familiar scenario, i.e., the Commissioner argues generally for affirmance while neglecting points of error advanced by claimants. Interests of justice suffer because the adversarial process breaks down. The reviewing court receives only one viewpoint, and must address the issue presented for review without knowing the Commissioner's studied position.

### 2. *Legal Standards*

The analytical model for properly weighing expert medical opinion was discussed in plaintiff's first action for judicial review. *Stafford v. Commissioner,* No. 1:01cv249, 2003 WL 1831064 (E.D.Tex. Feb.11, 2003), at *6–*7. There is no need to repeat those principles of analysis here. For present purposes, it suffices to remain mindful of a few rudimentary rules that for simplicity's sake are summarized here in bullet-list form:

- A treating physician's *medical* opinion presumptively is entitled to great or controlling weight, but may be rejected for good cause; [8]

- A treating physician's *ultimate issue* opinion (i.e. eligibility for disability benefits) is not entitled to special significance; [9]

- When treating physician opinion is not afforded controlling weight, it must be evaluated in light of six objective factors specified by regulation published in 20 C.F.R. §§ 404.1527 and 416.927, irrespective of whether the opinion is medical or ultimate-issue in nature; [10] and

- When treating physician opinion is not afforded controlling weight, all other medical opinion must be evaluated according to the same regulatory factors. [11]

The Commissioner provides administrative guidance for applying the six objective factors in Social Security rulings 96–2p (61 F.R. 34490, 34491 (July 2, 1996)) and 96–5p (61 F.R. 34471, 34473 (July 2, 1996)). The six factors are as follows:

1. Examining relationship;

2. Treatment relationship, including:

    a. Length and frequency of treatment, and

    b. Nature and extent of treatment;

3. Support of opinion afforded by medical evidence;

4. Consistency of opinion with the administrative record as a whole;

5. Specialization of the medical source; and

---

**8.** *See* 20 C.F.R. § 404.1527(d)(2); SSR 96–2p, 61 F.R. 34490, 34491 (July 2, 1996); *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir.1985) (citing *Barajas v. Heckler,* 738 F.2d 641, 644 (5th Cir.1984)); *see also Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir.2001) (citing *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994) (internal citations omitted)); *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir.2000); *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir.1995).

Good cause may exist when the physician's statements are conclusory and brief; when statements are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; otherwise unsupported by the evidence; or when the treating physician is not credible because (s)he is "leaning over back-

wards to support the application for disability benefits." *See Myers v. Apfel,* 238 F.3d at 621; *Newton v. Apfel,* 209 F.3d at 455–56; *Greenspan v. Shalala,* 38 F.3d at 237; *Moore v. Sullivan,* 919 F.2d 901, 905 (5th Cir.1990); *Scott v. Heckler,* 770 F.2d at 485.

**9.** *See* 20 C.F.R. § 404.1527(e)(1) (2005); *Frank v. Barnhart,* 326 F.3d 618, 620 (5th Cir.2003).

**10.** SSR 96–5p, 61 F.R. 34471, 34473 (July 2, 1996); *See Myers v. Apfel,* 238 F.3d at 620; *Newton v. Apfel,* 209 F.3d at 456.

**11.** 20 C.F.R. § 404.1527(b) (2005).

6. Other factors brought to the adjudicator's attention, which support or contradict the opinion.

20 C.F.R. §§ 404.1527(d)(2)—(d)(6), 416.927(d)(2)—(d)(6) (2005).

3. *Application*

■ The first logical inquiry is whether ALJ Williams erred in not giving Dr. Beaudry's treating-physician opinion controlling weight. If there was no error, the next inquiry is whether Dr. Beaudry's opinion and other expert medical opinion was evaluated consistently with the regulation. If the court discerns error there, the final inquiry is whether the error was harmless.[12]

a. *Dr. Beaudry's Opinion*

i. Rejection of Dr. Beaudry's Opinion as Controlling

Plaintiff argues incorrectly that regulations required ALJ Williams to examine six factors when deciding whether to give Dr. Beaudry's opinion controlling weight. By its express terms, the regulation applies to treating physician opinion *only* after an administrative law judge first decides *not* to give the opinion controlling weight. The regulation states:

*"Unless we give a treating source's opinion controlling weight ... we consider all of the following factors in deciding the weight we give to any medical opinion."*

20 C.F.R. § 404.1527(d) (2005).

■ As explained in the first action before this court, treating physician ultimate-issue opinions are never entitled to con-

trolling weight, and their medical opinions can be rejected for good cause. Here, ALJ Williams found Dr. Beaudry's opinion internally inconsistent with his other findings, and further found Dr. Beaudry's opinion inconsistent with the record as a whole. These are legitimate reasons for refusing to give great or controlling weight to Dr. Beaudry's opinions. See, e.g., *Myers v. Apfel,* 238 F.3d at 621 (citing *Greenspan v. Shalala,* 38 F.3d at 237); *Newton v. Apfel,* 209 F.3d at 455–56; *Leggett v. Chater,* 67 F.3d at 566; *Moore v. Sullivan,* 919 F.2d at 905; *Scott v. Heckler,* 770 F.2d at 485. Hence, ALJ Williams committed no *legal error* when deciding whether to give Dr. Beaudry's opinions controlling weight.

ii. Evaluation of Dr. Beaudry's non-controlling opinions

■ Since ALJ Williams elected not to give Dr. Beaudry's opinions controlling weight, he was required to determine how much weight to give them by applying the regulatory analysis described above. ALJ Williams cited not only the regulation (20 C.F.R. § 404.1527), but also its implementing rulings, Social Security Rulings 96–2p and 96–6p, prior to discussing medical evidence. This recitation indicates that he was aware of the relevant legal standard and intended to apply it.

ALJ Williams did not thereafter specifically enumerate and discuss each regulatory factor in outline, separately numbered paragraphs, or other similarly structured form. However, his decision reflects that he *considered* Dr. Beaudry's opinion in

---

**12.** Administrative disregard or violation of regulatory requirements is subject to harmless error analysis. *See NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 1430, 22 L.Ed.2d 709 (1969) (Harmless error rule is appropriate when *"remand would be an idle and useless formality"*);

*Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) (*"No principle of administrative law or common sense requires to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result"*).

accordance with the regulation. He acknowledged Dr. Beaudry as plaintiff's treating physician and an examining physician (factors 1 and 2), and implicitly acknowledged Dr. Beaudry's specialization as an orthopedic surgeon (factor 5). Tr. 295. He stated that Dr. Beaudry's opinion is not supported by his own findings (factor 3) and that it is inconsistent with the medical evidence as a whole (factor 4). Tr. 296. Plaintiff points to no "other factors" (factor 6) which ALJ Williams should have considered when weighing Dr. Beaudry's opinion.

ALJ Williams committed no legal error when determining how much weight to give treating-physician Beaudry's opinions.

### b. *Examining and Reviewing Physician Opinions*

The other expert medical opinions relevant to this case came from Dr. Ashwin Trevedi, M.D., who examined plaintiff, and from Dr. Grethe E. Wik, D.O., who reviewed plaintiff's medical records, both at the request of Texas state agency responsible for initial disability determinations. Both physicians expressed their opinions as to plaintiff's physical capabilities despite impairment. Their opinions should have been evaluated under the same six factors as were applied to Dr. Beaudry's opinions.

### i. Dr. Trevedi

Based on his examination and review of plaintiff's medical records, Dr. Trevedi opined that plaintiff has "restricted movements of the knee and the back and absent movement of the L wrist with some decrease in the L hand grip." Tr. 185. However he discerned "no evidence of any muscular atrophy over the extremities" and found that "coordination and move-

ments of the hand and fingers is normal" but noted decreased left hand grip strength. *Id.* Dr. Trevedi further opined that plaintiff's "ability to do work activities such as sit, stand, move about, lift and carry mild to moderately heavy objects, handle objects, hear and speak is not restricted." *Id.*

▪ When considering Dr. Trevedi's opinion, ALJ Williams identified him as a one-time consultative examining physician. Tr. 296. This sufficiently addressed regulatory factors 1 and 2. ALJ Williams cited medical evidence in support of Dr. Trevedi's opinions (factors 3 and 4), specifically "essentially normal" x-rays of plaintiff's left knee and MRI [13] of plaintiff's lumbar spine which indicates "no evidence of disc herniation or neural foraminal encroachment." Tr. 296; See Tr. 185–86, 233. Neither ALJ Williams nor the administrative record identifies Dr. Trevedi's specialization (factor 5). Plaintiff did not identify "other factors" (factor 6) which ALJ Williams should have considered with regard to Dr. Trevedi's opinion.

There is no basis for finding legal error in the manner ALJ Williams evaluated Dr. Trevedi's medical opinions.

### ii. Dr. Wik

Dr. Wik opined, based on her review of plaintiff's medical records, that plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently; stand, walk, and sit for 6 hours in an 8–hour day; and can push and/or pull with unlimited capacity. Tr. 188. She further opined that plaintiff has no environmental restrictions which would preclude working around dangerous machinery or heights (Tr. 191), and that plaintiff can frequently crawl and

---

**13.** MRI is an initialism for magnetic resonance imaging. Dorland's Illustrated Medical Dictionary, 29th Ed.

climb ropes, ladders, and scaffolding (Tr. 189). Despite these findings, she inexplicably stated with respect to plaintiff's symptoms,

*"The alleged limitations caused by client's symptoms are supported by MER [medical evidence of record]."*

Tr. 192.

ALJ Williams ultimately did not adopt or otherwise rely on Dr. Wik's opinion regarding plaintiff's residual functional capacity. Indeed, it appears he disregarded Dr. Wik's opinion entirely in light of the wholly contradictory, illogical and apparently mispoken conclusion from Dr. Wik quoted above. Instead, ALJ Williams assessed plaintiff's residual functional capacity for alternative work at a much lower level than did Dr. Wik.

■ Because ALJ Williams apparently ignored Dr. Wik's opinion, his decision gives no indication that he weighed Dr. Wik's opinion in light of the six regulatory factors. This omission was plain error. But just as plainly, this error was harmless. Plaintiff points to none of the six regulatory factors which, had it been applied, would have prompted ALJ Williams to give great weight to Dr. Wik's opinion. Even if there were such evidence, it is inconceivable that ALJ Williams would have been likely to accept the single, apparently mispoken conclusion about the effects of plaintiff's symptoms over Dr. Wik's specific and contrary findings regarding plaintiff's ability to lift, walk, stand, stoop, etc. Finally, ALJ Williams's assessment of plaintiff's residual functional capacity was more favorable to plaintiff than Dr. Wik's. Hence, the error is harmless because there is no reason to believe that application of the six-factor analysis to Dr. Wik's opinions might lead to a different result.

## B. Alleged Substantial Evidence Error Regarding Credibility Determinations

This point of error is subtle and somewhat difficult to grasp. It becomes less abstruse by considering, first, an obvious example. In a hypothetical case, an administrative law judge would commit no *legal error* in denying an application because the applicant is engaging in substantial gainful employment. Inability to engage in substantial gainful employment being a *sine qua non* prerequisite to eligibility for benefits, an administrative law judge would act pursuant to applicable law by denying the application. But the adverse decision might still be overturned based on a *substantial evidence error.* Although the administrative law judge may have cited valid *legal* grounds, the decision could not stand if the finding were not supported by substantial *evidence.*

By necessary and logical extension, the same principles apply to an administrative law judge's credibility determinations. For example, there would be no *legal error* if an administrative law judge were to discredit a physician's opinion on the basis that the physician was "leaning over backwards to support the application for disability benefits." *Scott v. Heckler,* 770 F.2d at 485. But if the evidentiary record contained no support for such a finding, the administrative law judge's credibility choice might constitute a *substantial evidence error* warranting reversal.

The point of error discussed in this section advances this argument. Essentially, plaintiff's point implies that whenever an administrative law judge makes an adverse credibility determination based on a specific finding, that finding must be supported by substantial evidence. As discussed below, plaintiff argues that the specific credibility findings articulated by ALJ Williams are not supported by substantial evidence.

### 1. *Competing Arguments*

Plaintiff argues that ALJ Williams rejected Dr. Beaudry's assessment in large part because he viewed it as internally inconsistent with other opinions expressed by Dr. Beaudry. Plaintiff specifically challenges ALJ Williams's statement that Dr. Beaudry himself undermined his opinion of total and permanent disability by stating in an October, 1999, report that plaintiff could perform light work. Plaintiff argues that this was a blatantly incorrect misstatement because Dr. Beaudry's report contained no such statement.

In addition, plaintiff argues that ALJ Williams failed to explain how Dr. Beaudry's assessment was inconsistent with the evidence as a whole, and "simply disagreed with the doctor's opinion ... substitut[ing] his opinion for the treating doctor's medical opinion." Pl.'s Br. at p. 15–16.

The Commissioner concedes that ALJ Williams misstated Dr. Beaudry's October, 1999, opinion, but characterizes the mistake as ALJ Williams's "drafting error." The Commissioner argues that the error was harmless in any event. Deft.'s Br. at p. 8. Finally, the Commissioner argues that other medical evidence of record does not support a finding that plaintiff is disabled. Specifically, the examining physician's opinion supports the ALJ's determination that plaintiff can "perform some light work." *Id.* at p. 9.

### 2. *Legal Standards*

Substantial evidence is more than a scintilla, but less than a preponderance, *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992); it requires evidence relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *See Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Marcello v. Bowen,* 803 F.2d 851, 853 (5th Cir.1986) (citing *Jones v. Heckler,*

702 F.2d 616, 620 (5th Cir.1983)). The evidence must be "enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Bd. v. Columbian Enameling & Stamping Co.,* 306 U.S. 262, 299–300, 59 S.Ct. 206, 217 (1939), *cited in* Harvey L. McCormick, *Social Security Claims and Procedures* §§ 672 (4th ed.1991).

### 3. *Application*

ALJ Williams discounted Dr. Beaudry's opinion stated in his November, 2000, assessment ("Assessment") because that assessment was inconsistent with (a) Dr. Beaudry's own findings and (b) the medical evidence as a whole. Also, ALJ Williams concluded that "some limitations are not supported by objective medical findings and are not a part of the residual functional capacity." Tr. 296.

#### a. *Internal Consistency of Dr. Beaudry's Opinion*

The first issue is whether substantial evidence supports ALJ Williams's conclusion that Dr. Beaudry's own findings do not support his opinion that plaintiff is disabled from all work on a regular basis. Tr. 296. ALJ Williams reached this conclusion, in part at least, by interpreting Dr. Beaudry's October, 1999, report to Kemper National Services, Inc. (worker compensation insurance carrier) which stated:

[Plaintiff] remains totally and permanently disabled from returning to his regular duties. *He has been advised on several occasions that no modified or light duty is available where he is employed.*

Tr. 198 (italics added). ALJ Williams interpreted the italicized portion of this re-

port as constituting an affirmative statement from Dr. Beaudry that plaintiff can perform light or modified duties of employment. Tr. 296.

Plaintiff correctly argues that ALJ Williams did not accurately recite Dr. Beaudry's statement. Dr. Beaudry did not explicitly state that plaintiff can perform light work. However, Dr. Beaudry expressly distinguished plaintiff's *regular* duties from potential *"modified or light duty."* ALJ Williams could reasonably assume that Dr. Beaudry would have unequivocally stated that plaintiff is disabled from work at any level if such had been his opinion at that time. Further, ALJ Williams could reasonably assume that Dr. Beaudry would not have mentioned modified or light work unless he thought such work was an option if it were available to plaintiff. Thus, by implication, ALJ Williams could construe Dr. Beaudry's statement as suggesting that plaintiff could perform certain gainful employment if available.

In sum, ALJ Williams clearly misstated Dr. Beaudry's October, 1999, report. However, substantial evidence supports his substantive interpretation of the information therein.[14] There is no reversible error on this point.

### b. Medical Evidence as a Whole

■ The second issue is whether substantial evidence supports ALJ Williams's finding that Dr. Beaudry's opinion that plaintiff is totally and permanently disabled from any occupation is inconsistent with the medical evidence as a whole.

ALJ Williams cited Dr. Trivedi's report as medical evidence inconsistent with Dr. Beaudry's assessment. Dr. Trivedi reviewed Dr. Beaudry's surgical notes and acknowledged plaintiff's multiple surgeries on his left wrist and left knee. Tr. 184, 185; *see* Tr. 203. But upon examination, Dr. Trivedi found "no ... muscular atrophy over the extremities" and normal "coordination and ... movements of the hand and fingers," but noted "absent movement of the L. wrist with some decrease in the L. hand grip." Tr. 185. Regarding plaintiff's left knee, Dr. Trivedi noted "no swelling or redness ... [n]o tenderness ... [and] no synovial membrane thickening over the left knee" but observed that "L knee terminal extension is restricted." *Id.* He further noted "some limping on the L side but pt. can ambulate without any assistive device." Dr. Trevidi further noted that left knee x-ray performed on November 18, 1999, indicated "incidental finding of small bone island, otherwise normal." *Id.* Regarding plaintiff's back, Dr. Trivedi noted "[n]o spasm, no tenderness, no muscular atrophy.... Lumbar spine movements are mildly painful; flexion is 40 degrees, R and L lateral flexion is 20 degrees, extension is 15 degrees." *Id.* Dr. Trivedi opined that plaintiff's "ability to do work activities such as sit, stand, move about, lift and carry mild to moderately heavy objects, handle object, hear and speak is not restricted." *Id.*

ALJ Williams noted that plaintiff "is not in any pain management program, or a physical therapy program, or any exercise program .... [and] has not sought other measures that might prove helpful." Tr. 297. The record supports these findings.

14. Dr. Beaudry's clinic notes in December, 1999, and May, 2000, record plaintiff's subjective complaints of wrist and lower back pain. The notes indicate that Dr. Beaudry prescribed pain medication refills, instructed plaintiff to continue isometric exercises, and recommended "followup in three months or p.r.n." Tr. 196, 197. Generally, the notes indicate routine monitoring of plaintiff's condition for pain medication refills and conservative treatment consisting of recommendation for exercise.

Although Dr. Beaudry instructed plaintiff to perform isometric exercises, his notes do not indicate that plaintiff complied. Tr. 196–97. ALJ Williams further noted that plaintiff's pain medications "provide some relief for his pain." Tr. 296. Plaintiff's own testimony support this conclusion. Tr. 368.

Substantial evidence of record supports ALJ Williams's finding that Dr. Beaudry's opinion is inconsistent with the medical evidence as a whole.

### c. *Limitations unsupported by medical evidence*

█ Dr. Beaudry opined that plaintiff's ability to reach, handle, feel, push and pull are limited by "surgical arthrodesis of his left wrist." Tr. 250. Dr. Beaudry further opined that plaintiff cannot be exposed to heights, moving machinery, temperature extremes, chemicals, humidity, or vibration in the work place. *Id.*[15]

ALJ Williams did not include manipulative limitations in plaintiff's RFC. Citing Dr. Trivedi's opinion, he found that "there was no evidence of any muscular atrophy over the extremities and the coordination and movements of his hands and fingers were normal . . . . [S]ensations were intact to pinprick and light touch, his muscle tone was normal and his strength was 5/5 in all four extremities." Tr. 296. ALJ Williams's statements are supported by Dr. Trivedi's opinion. See Tr. 185.

Dr. Beaudry cited "restricted finger and wrist movements, loss of coordination, lower back and knee pain" as limitations to plaintiff's ability to work at heights or around moving machinery, temperature extremes, chemicals. ALJ Williams precluded work at heights by stating that

plaintiff can never climb rope, ladders, or scaffolding. He did not preclude environmental factors from plaintiff's RFC, and the record supports his decision. Apart from Dr. Beaudry's statement that plaintiff's impairments impose environmental restrictions (Tr. 250), the record contains no evidence that plaintiff cannot work with moving machinery or in temperature extremes, chemicals, humidity and vibration. Indeed, plaintiff's testimony is that he works in a muffler shop "doing brake work and muffler work" which is accomplished under "drive-on racks that lift [the vehicles] up." Tr. 369.

### C. Alleged Substantial Evidence Error Regarding Hypothetical Question

#### 1. *Competing Arguments*

Plaintiff argues that "Dr. Beaudry stated in his narratives and in his assessment that [plaintiff] required significant analgesic medication." Plaintiff further argues that ALJ Williams "noted that claimant's pain medications have significant side effects" but he nonetheless "did not include any reference or limitation from the medications" in his hypothetical question to the VE, an omission which deprives the VE's response of substantial evidentiary support for the Commissioner's decision. Pl.'s Br. at p. 20. The Commissioner responds that the hypothetical question "incorporated reasonably all of the disabilities recognized by the ALJ." Deft.'s Br. at p. 11. The Commissioner further argues that "[t]he ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible." *Id.* at p. 12.

---

15. Additionally, Dr. Beaudry opined that plaintiff's use of narcotic pain medication "makes it very difficult for him to engage in any gainful occupation." Tr. 251. However, plaintiff testified that he works even while taking pain medication. Tr. 368. See Sec. IV.C., *infra.*

### 2. *Legal Standards*

When eliciting expert vocational testimony, an ALJ typically poses a hypothetical question that incorporates all disabilities that the ALJ has found. If the disabilities recognized by the ALJ are reasonable under the evidence, and the ALJ's ultimate determination is consistent with the expert vocational testimony, the ensuing decision is considered to be supported by substantial evidence. *Morris v. Bowen,* 864 F.2d 333 (5th Cir.1988). However, if the hypothetical question is defective due to the ALJ's failure to accurately portray a claimant's physical and mental impairments, a determination of non-disability based on the vocational expert's answer to a defective question is not supported by substantial evidence, and cannot stand. *Boyd v. Apfel,* 239 F.3d 698, 707 (5th Cir. 2001) (citing *Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir.1994)).

### 3. *Application*

When considering plaintiff's subjective complaints, ALJ Williams stated, "Although the claimant's pain medications have significant side effects they provide some relief for his pain." Tr. 296. When determining plaintiff's RFC for "less than a full range of light work, but more than sedentary," ALJ Williams found the following limitations:

> standing or walking 3 hours in an 8–hour day with the opportunity to sit once every 30 minutes and lifting or carrying 20 pounds occasionally and 10 pounds frequently.... occasionally climb stairs and ramps, stoop, kneel, and crouch, but must never climb a rope, ladder or scaffolding or crawl.... capable of lifting 5 pounds maximum with his left hand and using it as a guide.

**16.** Plaintiff stated, "I'm actually taking more than what the doctor is prescribing me to take

Tr. 297. His hypothetical question to the VE incorporates the same limitations. Tr. 373.

ALJ Williams did not find that effects of plaintiff's pain medication limit his RFC. Nor did he include limiting effects of pain medication in his hypothetical question to the VE. This requires the court to consider whether he should have done so, based on the evidence of record.

Dr. Beaudry's notes indicate that he consistently prescribed pain medication for plaintiff. He also indicated that plaintiff should curtail his dependence on the medication. Tr. 198. In his medical assessment, Dr. Beaudry indicated that plaintiff's use of pain medication may affect his concentration and contraindicates "the aforementioned activities," presumably restrictions noted in the assessment's preceding question against working at heights or around moving machinery or chemicals. Tr. 250.

However, Dr. Beaudry's opinion is contradicted by plaintiff's own testimony. When ALJ Williams questioned plaintiff regarding use of pain medication, plaintiff responded that he is able to work despite taking more than the prescribed dosage of pain medication.[16] Tr. 368.

The ALJ must determine the credibility of medical experts as well as lay witnesses, and to weigh their opinions and testimony accordingly. *Moore v. Sullivan,* 919 F.2d at 905; *Scott v. Heckler,* 770 F.2d at 485; *Ferguson v. Secretary of HHS,* 919 F.Supp. 1012, 1020 (E.D.Tx.1996); 20 C.F.R. 404.1527. ALJ Williams cited good cause for not assigning controlling weight to Dr. Beaudry's medical assessment. See discussion, Sec. IV.B.3, *supra.* Therefore, he was not required to adopt Dr. Beaudry's opinion regarding effects of pain

to be able to get enough relief to be able to work." Tr. 368.

medication on plaintiff's RFC. Moreover, plaintiff's testimony that he works despite exceeding the prescribed dosage of pain medication effectively contradict any evidence that effects of the medication limit his ability to work. ALJ Williams's hypothetical question incorporated all limitations which he recognized and which are supported by substantial evidence. ALJ Williams adopted the VE's testimony in response to his question. His decision is therefore supported by substantial evidence.

## V. RECOMMENDATION

The Commissioner's decision should be affirmed and this case dismissed.

## VI. OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report., 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n.,* 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

